## McDONALD et al. v. DOYSCHEN et al.

### No. 12274.

Court of Civil Appeals of Texas. Fort Worth.
March 1, 1930.

Rehearing Denied April 12, 1930.

Mike E. Smith, of Fort Worth, for appellants.

Baskin, Eastus & Greines, of Fort Worth, for appellees.

CONNER, C. J.

This suit was instituted in the district court of the Ninety-Sixth judicial district of Tarrant county by Dora Doyschen and hus-

band, B. Doyschen, and Mrs. Gertie Gernsbacher and husband, Jake Gernsbacher, against Wm. M. McDonald and Mrs. Ella Blackburn, a widow, in trespass to try title to recover the north 60 feet of lot 1, in block 1, Gillian and Crump subdivision of block 32, city of Fort Worth. As an alternative plea, the plaintiffs alleged that they purchased the property in question from Sam Kaufman, by deed dated October 26, 1925, who had previously purchased the property under tax foreclosure proceedings by the city of Fort Worth. It was alleged that Kaufman applied the purchase money paid by the plaintiffs to the payment of the tax judgment, and that in addition thereto plaintiffs, since their purchase, had paid taxes on the property for the years 1925, 1926, and 1928, and recording fees, etc., and prayed that if they were not entitled to recover the land, then that they have a judgment fixing a lien on the property for the sums so paid.

The case was tried before the court without a jury, and the court, upon February 5, 1929, rendered judgment denying plaintiffs recovery of the lot in controversy, but gave them a judgment against the defendant McDonald for the taxes paid by them on the property, with interest and penalties aggregating the sum of $412.26, fixing a lien on the lot for the payment thereof, and directing order of sale, etc.

McDonald excepted to the judgment in so far as thereby he was required to pay $412.26 against the property, and gave notice of appeal, which has been duly prosecuted and the cause is now before us.

The material complaint presented by appellant's assignments of error and propositions are in substance that plaintiffs were mere volunteers and intermeddlers in the payments made by them, at the time having notice of appellant's possession of the property by a tenant; that the deed from Kaufman was a quitclaim deed; and that the evidence fails to disclose any basis in law or equity which would create a liability upon appellant for the amount awarded or that would warrant or justify a judgment fixing a lien on the land for the payment thereof.

The evidence shows that the suit for taxes was instituted by the legally authorized attorney against Ella Blackburn, Dora Doyschen, and her husband, B. Doyschen. The judgment recites that the defendant Ella Blackburn had been duly cited by publication and had made default; that for her counsel had been duly appointed; that the defendants Dora and B. Doyschen had been duly served with citation; and that they also had made default. Judgment was rendered against those parties on the 8th day of August, 1925, for delinquent taxes due the city on the lot for the years 1918, 1921, 1922, 1923, aggregating the sum of $199.53, with interest beginning to run after the 1st day of February of each of said years, and to continue until the judgment had been fully paid and satisfied, and to secure the payment of all which a lien was declared and fixed upon the lot in controversy with order of sale, etc.

An order of sale was duly issued on September 8, 1925, and executed on October 6, 1925, as shown by the sheriff's return, the sheriff signing the names of Dora Doyschen and B. Doyschen and Ella Blackburn to the deed. Before the sheriff's deed was delivered, appellee B. Doyschen heard that the sale had been made to Kaufman and he arranged with Kaufman to give Kaufman his check to cover Kaufman's bid, Kaufman to pay the amount to the sheriff in discharge of Kaufman's bid, and then to quitclaim the property to Dora Doyschen and Gertie Gernsbacher, all of which was done on October 26, 1925.

Kaufman, without dispute in so far as shown in the record, paid the amount received from B. Doyschen to the sheriff in discharge of his bid, and no complaint is made of the legality of any proceeding in the tax foreclosure suit, except that appellant insists that the judgment against Ella Blackburn was void for the reason that at the time of the institution of the suit and of the judgment Ella Blackburn was in possession of the lot in controversy as a tenant of appellant. In this connection it may be proper to state that one of the appellees had sold the property before any of the years mentioned herein to Mrs. Blackburn, taking her vendor's lien note for part of the purchase money, which note was later assigned to appellant McDonald, who thereafter sued Mrs. Blackburn thereon, foreclosing the lien, and had title conveyed to him; his deed being on record at the time of appellee's purchase from Kaufman, but not at the time of the institution of the tax suit or of the rendition of the judgment therein.

The citation of Mrs. Blackburn in the tax suit was issued upon the usual affidavit that her residence was unknown and that the judgment against her was void, as appellant contends must be conceded. See Scales v. Wren, 103 Tex. 304, 127 S. W. 164, and numerous other cases that might be cited. We think, however, that we need not discuss the validity of the judgment as to Mrs. Blackburn for the reason that the trial court's judgment awarded the title to the property in question to appellant and no cross-assignment of error in behalf of appellees questions the judgment in this respect. The tax judgment, however, on its face was not void as against Dora and B. Doyschen, and the court's finding as recited in his judgment is that appellee's purchase from Kaufman was in good faith and that the money paid to Kaufman as well as all taxes thereafter paid by appellee inured to the benefit of appellant McDonald, because of which appellee became subrogated to the rights of Kaufman and the city, etc.

■ The amount of the judgment awarded

in favor of appellees is not questioned, nor do we think it can be said that the evidence fails to support the court's finding that the purchase from Kaufman was in good faith. B. Doyschen testified without contradiction to the effect that when served with citation in the tax suit, he wrote to the district clerk to the effect that appellees had no interest in the property and requested him to eliminate them from the suit as he had been advised to do by his counsel, a Mr. Valentine. That at the time of his consultation with Mr. Valentine, he (Valentine) called Mr. McDonald over the telephone and notified him of the institution of the suit and advised him to pay the taxes on the property. That after the judgment had been rendered he (B. Doyschen) again consulted Mr. Valentine and asked if the tax title by the city was good, and that Mr. Valentine told him that it was; that he also consulted another attorney and asked him if the title by the city was good, and that he also told him that it was. That he, as already stated, arranged with Kaufman to have him (Kaufman) accept the amount of his bid and apply the same in discharge of the tax judgment and receive from Kaufman a conveyance which recited that it "granted" and conveyed all the "interest" Kaufman had in the property by virtue of the tax sale; that the conveyance from Kaufman was taken in the name of Mrs. Doyschen and Mrs. Gernsbacher, for whom he (the witness) acted; that based upon the advice of the attorneys mentioned he "believed that the title of that property was good in us when I got the title." He further testified to the payment of taxes for subsequent years, the aggregate amount of which is not disputed; nor is it contended that McDonald or Mrs. Blackburn had ever paid any part of the taxes referred to; nor is any complaint made of a want of regularity in the tax proceedings, except that the judgment was void as against Mrs. Blackburn because of a want of due service of citation.

■■ The question of good faith is one of fact to be determined by the court or jury trying the case. In the case of Louder v. Schulter, 78 Tex. 103, 14 S. W. 205, 206, it is said, among other things, that: "It has been decided in this state that one holding under a defective tax-title may be a possessor in good faith in the sense in which the term is used in the statute in relation to improvements. Good faith is the question, and it is a question of fact to be determined by the jury under the law. There may be a title in another superior to that of defendant, and such title may be known to him; yet he might believe, and have good grounds to believe, in his own claim to the property."

The same doctrine is announced in the case of Netzorg v. Green, 26 Tex. Civ. App. 119, 62 S. W. 789, 791, in which a writ of error was denied by the Supreme Court, which was a trespass to try title suit by the owner of land sold under a void judgment foreclosing a tax lien, and in which opinion, among other things, the following is said:

"Our conclusion is that appellant should have recovered the land in the lower court, subject to such improvements as may have been made in good faith by appellee. * * *

"The question of good faith is one of fact, depending upon the circumstances of the particular case in which it is asserted. Wortham v. Boyd, 66 Tex. 401, 1 S. W. 109. The existence of good faith is a fact to be established in such cases by evidence of other facts tending to show that the person asserting it at the time he made improvements on the land believed himself to be its owner, and had grounds for such belief, such as would ordinarily be satisfactory to one unlearned in the law, but of ordinary intelligence, after having made such inquiry as the law presumes every person desiring to buy land will make, and as an ordinarily prudent man for his protection ought to make.' * * * We cannot hold as a matter of law that appellee did not make his improvements in good faith because he held under a void tax title."

In Pomeroy v. Pearce, 2 S.W.(2d) 431, by section A of the Commission of Appeals, it was said that the question whether a purchaser at a void tax sale acted in good faith in making improvements on land is one of fact to be determined from all facts and circumstances in evidence.

Other authorities of like tenor and effect might be cited, but it may be said that the allowance in such cases for improvements made in good faith is authorized by the statutes, and that therefore the statute is the basis of relief in such cases, and that we have no statute extending the doctrine to cases such as this for the recovery of taxes paid. The statute providing for reimbursement for improvements made in good faith is in principle but a statutory declaration of the rule in equity that he who seeks equity must do equity, and it is difficult to say why in principle the rule should be different in the two classes of cases mentioned. Yet upon this distinction perhaps rests such cases as McCormick v. Edwards, 69 Tex. 106, 6 S. W. 32; North Texas Lumber Co. v. First National Bank, 186 S. W. 258, by the Texarkana Court of Civil Appeals, and other cases perhaps of like effect, wherein it is held that a void tax sale involves no equity that would subrogate the purchaser for rights of the state for taxes paid and entitle him to reimbursement from the true owner when sued by him to recover the land. It may be of some weight, however, to note that the judgment for the delinquent taxes involved in this suit was rendered against the appellees. Nothing in the record requires the belief that the appellees did not in good faith believe that after the notification given to the district clerk the

suit as to them would be dismissed, or that in making default and suffering the default judgment against them to be entered they acted in bad faith or failed to act in good faith.

In the case of Stone v. Tilley, 100 Tex. 487, 101 S. W. 201, 10 L. R. A. (N. S.) 678, 123 Am. St. Rep. 819, 15 Ann. Cas. 524, it was held that a mortgagee, who, to protect his mortgage and not at the request of the owner, pays off a judgment foreclosing a tax lien on the land, acquires a right to include the sum paid in his foreclosure against the land. Why then can it be said to be inequitable on the part of appellees against whom the judgment was rendered to protect themselves by a purchase of the land at the tax sale? The moneys thus expended and expended in the payment of taxes in subsequent years certainly inured to the benefit of appellant, who himself was in default during the entire period.

In other jurisdictions it has been held a number of times that a purchaser from the state under a void tax sale is entitled in ejectment to a judgment for the amount of taxes, penalties, and costs actually paid by him with legal interest thereon from the dates of payment. See Anderson v. Williams, 59 Ark. 144, 26 S. W. 818. In Mitchell v. Arkell, 3 Colo. App. 253, 32 P. 720, it was held in an action to set aside a tax deed, where defendant has paid the taxes, that it is error to adjudge the property to plaintiff without decreeing the payment of the taxes advanced and the statutory interest, as such payment of taxes is an equitable lien on the property. In Reed v. Tyler, 56 Ill. 288, a bill was filed to set aside, as invalid and a cloud upon claimant's title, a sale of land for taxes and a deed thereunder. The evidence showed that the complainants, claiming to own the land, and neglecting to pay the taxes thereon, permitted it to go to sale. It was held that the relief should be granted only upon condition that all the taxes paid by the party claiming under the tax sale should be refunded to him. To the same effect is Barnett v. Cline, 60 Ill. 205; Phelps v. Harding, 87 Ill. 442.

In Walsh v. Harang, 48 La. Ann. 984, 20 So. 202, it was held that on a recovery by plaintiff of real estate held under an illegal tax sale, the defendant is entitled to judgment for the amount of taxes paid by him since such sale. Of like tenor and effect are the cases of Martin v. Swofford, 59 Miss. 328; Dillon v. Merriam, 22 Neb. 151, 34 N. W. 344; Bloomstein v. Brien, 3 Tenn. Ch. 55.

In Haney v. Cole, 28 Ark. 299, it was held that the purchaser at a void tax sale was entitled to have damages assessed in his favor to the amount of all taxes and costs, with the percentage thereon prescribed by statute, together with the value of all improvements made, and to a lien until the same is satisfied.

It may be said that one or all of the cases from other states enforcing the equitable rule of reimbursement in favor of the purchaser at a void tax sale is predicated upon some statute of the state so requiring. In our examination of the cases we have not been able to determine whether or not this is true in all of the cases. But if it be admitted that there must be some legislative or other legal enactment so authorizing in order for a court of equity to administer such relief, we find section 38 of the Charter of the City of Fort Worth, of which we are required to take judicial notice, reading as follows: "If any unredeemed tax [deed] be held void or of no effect to convey the real estate described therein, or the interest in such real estate, which said deed purports to convey the grantee in such deed, or his heirs or assigns or legal representatives, as the case may be, shall nevertheless be held to be subrogated to the rights and liens of the city against the said estate and the owner thereof and shall recover against said owner the amount of all taxes, penalties and costs paid to the city for such tax deed, with interest thereon from the date of such payment at the rate of eight per centum per annum and with a foreclosure of a first and prior lien upon said real estate, and an order for the sale thereof." The charter was granted by the Legislature.

In Sheldon on Subrogation, § 1, it is said: "It [subrogation] is treated as a creature of equity, and is so administered as to secure real and essential justice without regard to form, and is independent of any contractual relation between the parties to be affected by it. It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter; but it is not to be applied in favor of one who had, officially and as a mere volunteer, paid the debt of another for which neither he nor his property was answerable, and which he was under no obligation to pay, and it is not allowed where it would work an injustice to the rights of others.".

The section of the charter quoted above seems to embody the principles of equity suggested by Sheldon, and we conclude that appellees were not mere volunteers or intermeddlers in the premises, and that having acted in good faith, the section of the charter quoted, at all events, fully supports, under the circumstances, the trial court's judgment in appellee's favor for the taxes and costs paid by them which inured to the benefit of appellant's property, and that no error was committed in imposing an equitable lien upon the lot in question to secure payment of the reimbursement adjudged. The judgment is accordingly affirmed.