**Don M. SMART, Petitioner,**

v.

**TOWER LAND AND INVESTMENT COMPANY, Respondent.**

No. B–8664.

Supreme Court of Texas.

March 12, 1980.

Rehearing Denied May 7, 1980.

Timothy E. Kelley, Dallas, for petitioner.

Eldridge, Goggans & Weiss, H. Dee Johnson, Jr., Dallas, for respondent.

McGEE, Justice.

This is a suit for reimbursement of real property taxes that accrued while the property was held under a deed of trust. The taxes were paid by the mortgagee, Tower Land and Investment Company (Tower), after Tower foreclosed on the mortgage. Tower sought reimbursement from the mortgagor, Don M. Smart. Smart filed a counterclaim for usury. The trial court entered judgment for Tower for reimbursement for taxes and denied Smart's usury claim. The court of civil appeals affirmed. 582 S.W.2d 543. On Tower's claim for reimbursement we reverse the judgments of the lower courts and render judgment that Tower take nothing. We also reverse the lower courts' judgments that Smart's counterclaim for usury be denied.

In 1968 Tower sold approximately 35 acres of land to Smart. Smart paid part of the purchase price with a promissory note secured by a deed of trust. The note and deed of trust represented a "no personal liability" obligation.

Smart defaulted on his note in December 1975. Three months later Tower repurchased the property at the foreclosure sale. After the sale, Tower paid delinquent ad valorem taxes in the amount of $18,736.53, which had been assessed on the property during the time Smart owned the property. Tower then brought suit against Smart for reimbursement for the amount paid for taxes. Smart counterclaimed, alleging that the note was usurious.

## REIMBURSEMENT TO TOWER FOR TAXES

Neither Smart nor Tower disputes that under the deed of trust Smart was obligated to pay taxes assessed on the property during the mortgage; the parties disagree, however, on how Smart's liability to Tower for failure to pay taxes may be enforced. Both the trial court and the court of civil appeals held that Tower could pay the delinquent taxes after having purchased the property at the mortgage foreclosure sale and subsequently obtain a personal judgment against Smart for reimbursement. We will consider first whether the contractual relationship between Tower as mortgagee and Smart as mortgagor gives rise to a personal debt for taxes, and second, whether principles of equitable subrogation entitle Tower to obtain a personal judgment for reimbursement.

■ We first find that the mortgage contract did not give rise to a personal debt for taxes owed by Smart to Tower. Many Texas cases have held that if a mortgagor fails to pay taxes he has promised to pay, the mortgagee may treat the amount owed for taxes as part of the mortgage debt. In the usual mortgage agreement the rights and obligations of the mortgagor and mortgagee for expenses such as property taxes are set out in the deed of trust, and the duty to pay taxes is ordinarily the mortgagor's. If the mortgagor fails to pay the taxes, the mortgagee may pay them and the amount paid for taxes is considered to be a part of the mortgage debt. Both the mortgagor's obligation to pay the amount due on the purchase price and his obligation to pay taxes are secured by the mortgage. *See Stone v. Tilley*, 100 Tex. 487, 101 S.W. 201, 201–02 (1907); *Peurifoy v. Wiebusch*, 174 S.W.2d 619, 623 (Tex.Civ.App.—El Paso 1943, no writ); *Bryan v. Dallas Nat'l Bank*, 135 S.W.2d 249, 253 (Tex.Civ.App.—Dallas 1939, writ dism'd judgmt cor.); *Young v. Harbin Citrus Groves*, 130 S.W.2d 896, 901 (Tex.Civ.App.—San Antonio 1939, writ ref'd); *Yates v. Home Building & Loan Co.*, 103 S.W.2d 1081, 1087 (Tex.Civ.App.—Beaumont 1937, no writ); *Jefferson Standard Life Ins. Co. v. Lindsey*, 94 S.W.2d 549, 551–52 (Tex.Civ.App.—Eastland 1936, writ dism'd); *The Praetorians v. State*, 53 S.W.2d 334, 335 (Tex.Civ.App.—Waco 1932, writ ref'd); *Wood v. Scott*, 48 S.W.2d 1024, 1025 (Tex.Civ.App.—Waco 1932, writ ref'd).

Four documents represent the mortgage transaction between Smart and Tower: a contract of sale, an installment note, a deed of trust, and an extension agreement. Smart and Tower have agreed that these documents comprise their entire agreement. The installment note, containing Smart's promise to pay the purchase price and interest, also contains the following nonpersonal liability provision: "[t]he maker hereof is not now or shall he ever be personally liable on this note . . . ."

The deed of trust form contains the following paragraph, quoted in pertinent part, which sets out the rights and duties of the parties with respect to property taxes:

"It is agreed and stipulated that [Smart] shall and will at [his] own proper cost and expense, keep the property and premises herein described, and upon which a lien is hereby given and created, in good repair and condition, and to pay and discharge as they are or may become payable, all and every taxes and assessments that are or may become payable thereon under any law, ordinance or regulation, whether made by Federal, State, or Municipal authority, and shall keep said property fully insured . . . . And in case of default made by [Smart] in performance of any of the foregoing stipulations, the same may be performed by the holder of said indebtedness, for account and at the expense of [Smart], and any and all expenses incurred and paid in so doing shall be payable by [Smart] to [Tower] with interest at the rate of ten per cent per annum from the date when the same was so incurred or paid, and shall stand secured and payable by and under this deed in like manner with the other indebtedness herein mentioned . . . ."

According to Tower's interpretation of this paragraph, Smart's promise to reimburse

Tower for taxes is to exist as a personal debt independent of the mortgage debt. Tower emphasizes the following phrase from the paragraph: "and any and all expenses incurred and paid in so doing shall be payable by [Smart] to [Tower] . . . ."

■ Although the words, "shall be payable," standing alone may lend some support to the interpretation urged by Tower, we adhere to the rule that "[i]t is the duty of the Court to construe the contract as an entire instrument, and to consider each part with every other part so that the effect and meaning of one part on any other part may be determined." *Steeger v. Beard Drilling, Inc.*, 371 S.W.2d 684, 688 (Tex.1963). Immediately following the "shall be payable" phrase is the phrase "and shall stand secured and payable by and under this deed in like manner with the other indebtedness herein mentioned . . . ." The "other indebtedness" is Smart's promissory note for the purchase price and interest, which is described in the deed of trust form as follows: "Said note provides that the maker has no personal liability thereunder . . ." The tax payment provision in the deed of trust provides that Smart's liability to Tower for tax reimbursement was to be secured and payable in "like manner" as his note. Under these provisions, Tower was entitled to pursue his right to reimbursement for taxes at foreclosure, when he pursued his right to receive the balance due on Smart's note. Both the purchase money debt and the tax debt comprised a single mortgage debt to be enforced at foreclosure without personal liability.

■ We do not find that the words "shall be payable by [Smart]" give rise to an additional remedy for tax reimbursement, enforceable apart from foreclosure. By the terms of the installment note and the deed of trust Smart and Tower limited the purchase money debt to a nonpersonal liability, enforceable only by foreclosure proceedings against the property. Under the deed of

trust, Smart's liability for tax reimbursement is made part of the mortgage debt. There is no contractual authority created whereby Tower is also entitled to enforce his right to reimbursement as a personal debt. Regardless whether Tower paid taxes before or after foreclosure, he did not acquire the right to a personal judgment against Smart.

The "Extension of Lien" agreement executed in 1974 supplies an additional reason for holding that Smart and Tower intended all of Smart's obligations under the mortgage to be nonpersonal. It contains the following provision:

"And [Smart and Tower] also agree . . . that the lien given and retained to secure the payment of said Note *and all the agreements and covenants therein*, shall remain in full force and effect. This extension lien is without personal liability."

(Emphasis added). We conclude that the parties did not contract for personal liability for taxes.[1]

■ Tower contends that notwithstanding the terms of the mortgage contract, under principles of equitable subrogation, it is entitled to a personal judgment against Smart for tax reimbursement. Equitable subrogation may be invoked to prevent unjust enrichment when one person confers upon another a benefit that is not required by legal duty or contract. A right to subrogation is often asserted by one who pays a debt owed by another. If entitled to full subrogation, the payor is allowed to enforce the rights available to the creditor, such as rights against the debt's security. Subrogation to the creditor's rights is available, however, only when the debtor was enriched unjustly; thus, the payor who confers a benefit as a "mere volunteer" is not entitled to this remedy. *Oury v. Saunders*, 77 Tex. 278, 13 S.W. 1030, 1031 (1890).

Often one who pays real property taxes assessed while the property was owned by

---

1. We do not suggest that if Smart's mortgage note were a personal liability obligation and the deed of trust and lien extension had not contained the "no personal liability" language, there would be no personal liability for taxes paid by the mortgagee prior to foreclosure in the event the net proceeds of foreclosure were insufficient to pay them.

another asserts a right to be subrogated to the taxing authority's constitutional and statutory lien. Under this lien, liability for taxes is secured by the property and may be enforced by foreclosure. *See* Tex. Const. art. VIII, § 15; Tex.Rev.Civ.Stat.Ann. art. 7172 (Vernon Supp. 1979). Other special rights and privileges have been held to inure to the taxing authority in addition to its lien, such as the right to enforce tax liability as a personal debt. *See Texas Vegetable Union v. Zavala-Dimmitt Counties Water Imp. Dist. No. 1*, 57 S.W.2d 883 (Tex.Civ. App.—San Antonio 1933, writ ref'd); *Humble Oil & Refining Co. v. State*, 3 S.W.2d 559 (Tex.Civ.App.—Waco 1927, writ ref'd).

Whether one who pays property taxes assessed on property owned by another is entitled to subrogation to the taxing authority's lien, and if so, the extent to which he is subrogated, equitably or otherwise, to the special privileges accompanying the lien, has been the source of much litigation. The taxpayer's right to subrogation may arise by statute, *see McDonald v. Doyschen*, 28 S.W.2d 243, 246 (Tex.Civ.App.—Fort Worth 1930, no writ), or by express agreement, *see Dotson v. Pahl*, 206 S.W.2d 272, 273 (Tex.Civ.App.—Austin 1947, no writ); *Kauffmann v. Hahn*, 59 S.W.2d 435, 436 (Tex.Civ.App.—San Antonio 1933, no writ); *Texas Bank & Trust Co. v. Bankers' Life Co.*, 43 S.W.2d 631, 631 (Tex.Civ.App.— Waco 1931, writ ref'd). Furthermore, there is a statutory procedure whereby the taxing authority's lien may be transferred. *See* Tex.Rev.Civ.Stat.Ann. art. 7345a (Vernon Supp. 1979). Even in the absence of statutory or contractual authorization, a limited right to equitable subrogation may arise in accordance with certain well-established rules of law.

▮▮ The rule set out in *Stone v. Tilley, supra*, 101 S.W. at 202, with respect to a mortgagee who pays taxes that his mortgagor is under a duty to pay is consistent with general principles of subrogation. The mortgagee's interest in the security of his mortgage makes him more than a "mere volunteer" when he pays taxes owed by the mortgagor. *Burkhardt v. Lieberman*, 138

Tex. 409, 159 S.W.2d 847, 853 (1942). Because the relationship between the mortgagor and mortgagee is contractual, the extent to which the mortgagee is subrogated to the taxing authority's rights may be addressed in the documents representing their agreement, particularly in the deed of trust. Unless provided otherwise, the mortgagee is subrogated to the security of the tax debt. Taxes not paid by the mortgagor are considered to be part of the mortgage debt. Upon foreclosure, the proceeds from the sale of the property may be applied in satisfaction of the amount paid for taxes. *Stone v. Tilley, supra*, 101 S.W. at 202; *Wood v. Scott*, 48 S.W.2d 1024, 1025 (Tex. Civ.App.—Waco 1932, writ ref'd). As discussed above, the mortgage contract between Smart and Tower comports with this right to equitable subrogation to the taxing authority's lien and expressly precludes personal liability. The parties having fixed their rights by contract, additional rights, such as are incidental to the sovereign's taxing power, will not be created by judicial intervention.

▮▮ After foreclosure, the relationship between the mortgagor and mortgagee in those capacities ends. If the mortgagee purchases the mortgaged property, as Tower did in this case, his interest in the property becomes an ownership interest. If taxes on the property owed by the mortgagor are delinquent, the purchaser, whether the mortgagee or a disinterested party, may desire to pay them to prevent foreclosure by the taxing authorities. Because of his interest in protecting his title, the purchaser is not a "mere volunteer," when he discharges an outstanding tax lien. Under various circumstances he may be subrogated to the taxing authority's lien to the extent necessary for his own equitable protection. *See McDermott v. Steck Co.*, 138 S.W.2d 1106, 1109 (Tex.Civ.App.—Austin 1940, writ ref'd). When not compelled by the equities of the situation, full subrogation to all special privileges accompanying the taxing authority's constitutional and statutory lien will be denied.

Tower urges that this court should adopt the rule followed in Pennsylvania cases that hold that a mortgagee who, after foreclosing and purchasing the property at the foreclosure sale, pays taxes assessed against the former owner, is subrogated to the taxing authority's right to maintain a personal action against the former owner for the amount of the taxes. *Pennsylvania Co. for Insurances on Lives and Granting Annuities v. Bergson*, 307 Pa. 44, 159 A. 32, 35 (1932); *Preston Retreat v. Potter*, 120 Pa.Super. 82, 182 A. 64, 64 (1935). We decline to follow this rule. In *The Praetorians v. State*, 53 S.W.2d 334 (Tex.Civ.App.—Waco 1932, writ ref'd), The Praetorians, assignee of a mortgagee, purchased the mortgaged property at foreclosure. Later, the State sought to enforce its lien for taxes that had accrued during the mortgage. The Praetorians, although compelled to pay the tax lien to protect its title, was not entitled to a personal judgment for reimbursement against the mortgagor's grantee, who had taken subject to the mortgage and owned the property when the taxes accrued. The court held:

"[H]ad the Praetorians, prior to the foreclosure of its deed of trust, paid the amount of taxes due the state and county, it would not have been entitled to a personal judgment against the lumber company for the taxes so paid, but would have been limited in its recovery to a foreclosure of a lien on the property for the amount of such taxes. The fact that it has foreclosed its lien and is now the owner of the property and may now be compelled to pay such taxes in order to protect its title, does not give it any greater right. It is, therefore, not entitled to a personal judgment against the lumber company for the amount of taxes which it may be required to pay in order to redeem the property from the judgment in favor of the state."

*Id.* at 335. The mortgagee who purchases the property with delinquent taxes owed by the mortgagor, may account for the delinquent taxes in determining his bid. The purchasing mortgagee who fails to pursue this course of action and purchases the property with taxes remaining unpaid will be considered to have purchased with reference to the tax liability. Assuming that the taxing authority would have been entitled to a personal judgment against Smart for taxes assessed during the mortgage, we do not believe that the equities of this suit entitle Tower to be subrogated to that right.

Because we find that no basis for imposing personal liability against Smart for taxes paid after foreclosure arises from the mortgage contract or by equitable subrogation, we hold that Tower may not enforce his reimbursement claim as a personal judgment against Smart.

## SMART'S COUNTERCLAIM
## FOR USURY

Smart's promissory note to Tower contained the following provision for interest payments prior to maturity:

"[W]ith interest thereon from date until three years from date at the rate of six percent (6%) per annum (such portion of the interest being paid for the first three years in advance on the date hereof) and thereafter at the rate of seven percent (7%) per annum  . . . .."

Only interest was payable until 1974, when payments of the principal amount of $517,-549.80 were to begin. Pursuant to these terms, Smart prepaid the first three years' interest at 6%, an amount of $93,159.00, at the inception of the note in 1968.

The note also gave Tower the option upon default to accelerate and mature the note:

"Default in the payment of any part of the principal or interest when due, or failure to comply with any of the agreements and conditions in the instrument given to secure this note shall, at the option of the holder hereof, mature this note and it shall at once become due and payable  . . .  however, holder shall give maker or endorsers thirty (30) days' notice of default before this note can be matured."

Another provision ensured that Tower was not required to refund payments:

"The maker hereof is not now nor shall he ever be personally liable on this note, but the payees or other holders of this note shall never be obligated to refund any payment of interest or principal after such payment has been made."

The note was extended in 1974 and Smart defaulted in 1975. Tower foreclosed on the property and purchased the property at foreclosure. Smart does not contend that Tower received usurious interest; Smart's usury claim is based on his contention that the note is usurious on its face because under hypothetical circumstances it allows the holder to receive more than the lawful rate of interest. The statute providing penalties for usury applies in the disjunctive to either a contract for, a charge of, or receipt of usurious interest, and any one of these triggers the penalty provisions. *Tanner Development Co. v. Ferguson*, 561 S.W.2d 777, 788 (Tex.1977) (on motion for rehearing).

According to Smart, the interest in advance terms, in conjunction with the acceleration clause and no refund provision, results in a potentially usurious contract. Smart argues that if he had defaulted during the first twenty-two months of the loan, Tower could have accelerated maturity of the entire principal and would not have been required to refund the three years' prepaid interest. If Tower did not credit part of this prepaid interest to principal, the rate of interest received by Tower would exceed 10% per annum.

Upon acceleration of maturity, the failure to properly refund or credit excess unearned interest may result in usury. *Tanner Development Co. v. Ferguson, supra* at 788–89 (on motion for rehearing). *See* St. Clair, *The "Spreading of Interest" Under the Actuarial Method*, 10 St. Mary's 753, 757 (1979). Whether the inclusion of an acceleration clause, and the attendant contingency that excess unearned interest may be collected or retained, makes a contract usurious is a question of construction. The contention that the lender's right to exercise an acceleration clause resulted in a usurious contract was discussed in *Shrop-*

*shire v. Commerce Farm Credit Co.*, 120 Tex. 400, 30 S.W.2d 282 (1930), *on motion for rehearing*, 39 S.W.2d 11 (1931), *cert. denied*, 284 U.S. 675, 52 S.Ct. 130, 76 L.Ed. 571 (1931). Holding that the particular contract under construction gave the lender the right to recover usurious interest, the court stated:

"In obedience to the behest of the Constitution to provide appropriate penalties to prevent contracts for a greater rate of interest than 10 percent per annum, the Legislature has declared that all written contracts whatsoever which may in any way, directly or indirectly, provide for a greater rate of interest than 10 percent per annum, shall be usurious . . . . . [T]he illegality is the same whether the contract for usury takes the form of a stipulation for lawful interest, becoming a stipulation for usurious interest through reduction of the original term of the loan and increase in that which may be exacted of the debtor, at the creditor's option, on no other contingency than the debtor's default; or whether the contract is in the form of a stipulation for interest in excess of 10 percent per annum for a specific term. Both contracts provide for usury."

*Id.* at 14 (on motion for rehearing). Significantly, the court had recognized a duty to give a legal construction to the contract, but because the "clear and positive language" of the contract provided for the collection of unearned interest in addition to the principal balance due, the contract was usurious.

Several cases decided after *Shropshire* have given nonusurious constructions to contracts alleged to be usurious because of acceleration clauses. In *Walker v. Temple Trust Co.*, 124 Tex. 575, 80 S.W.2d 935 (1935), this court stated:

"While of course courts have no right to depart from the terms in which the contract is expressed to make legal what the parties have made unlawful, nevertheless when the contract by its terms, construed as a whole, is doubtful, or even susceptible of more than one reasonable

construction, the court will adopt the construction which comports with legality. It is presumed that in contracting parties intend to observe and obey the law. For this reason the court will not hold a contract to be in violation of the usury laws unless, upon a fair and reasonable interpretation of all its terms, it is manifest that the intention was to exact more interest than allowed by law.

. . . . .

"[T]he rule should be, as clearly recognized in motion for rehearing in the *Shropshire Case* [*Shropshire v. Commerce Farm Credit Co.*, 120 Tex. 400, 30 S.W.2d 282, 39 S.W.2d 11, 84 A.L.R. 1269], that unless the contract by its express and positive terms evidences an intention which requires a construction that unearned interest was to be collected in all events, the court will give it the construction that the parties intended that the unearned interest should not be collected."

*Id.* at 936–37; *see Marble Sav. Bank v. Davis*, 124 Tex. 560, 80 S.W.2d 298, 299 (1935); *Sinclair v. Mack Trucks, Inc.*, 355 S.W.2d 563, 564 (Tex.Civ.App.—Fort Worth 1962, writ ref'd n.r.e.). These cases indicate that it will be presumed that the parties intended a nonusurious contract. The contract under construction will not be found usurious on its face unless it expressly entitles the lender, upon the happening of a contingency or otherwise, to exact interest at a rate greater than that allowed by law. *W. E. Grace Manufacturing Co. v. Levin*, 506 S.W.2d 580, 584 (Tex.1974).

■ Nevertheless, under the rule in *Shropshire* applied to facts of this case, we are unable to presume Tower intended a nonusurious contract. This is not a situation in which the contract is silent on whether the lender will collect unearned interest upon default and acceleration of maturity. To the contrary, three years' interest was prepaid and the note expresses

an intent to retain it in the event of acceleration as excess unearned interest. The note is not merely silent whether prepaid interest will be credited or refunded upon acceleration. It provides that interest will not be refunded. If acceleration had occurred early in the loan period, the transaction would be usurious. Acceleration upon the first anniversary of the note with the retention of the $93,159.00 prepaid interest for the use of $517,549.80 principal would have resulted in a rate of approximately 18% per annum, an amount in excess of the legal rate.

Tower argues that the transaction would be saved from usury if some of the retained interest were credited to principal. Although we recognize that this course of action may prevent usury, there is nothing in the note to indicate that Tower would pursue any course of action other than to keep unearned interest. The note attempts to give Tower the right to keep unearned interest in addition to the right to recover the balance on the note by foreclosure.

Having affirmatively provided for the retention of unearned interest, Tower was obliged to make further provisions ensuring that the retention of this interest would not result in a usurious transaction. Neither the note nor the deed of trust, nor any of the other documents contains any kind of usury savings clause whatever. *Cf. Nevels v. Harris*, 129 Tex. 190, 102 S.W.2d 1046, 1049–50 (1937). In the absence of a savings clause, we find that Tower's expressed authorization to retain excess unearned interest overcomes the presumption of legality accorded to allegedly usurious contracts.[2] Because the installment note is usurious on its face, we remand this case to the trial court for determination of the proper remedy to be imposed.

## CONCLUSION

For the reasons stated above, the judgments of the trial court and court of civil

---

2. The effective date of Tex. Laws 1975, ch. 26, § 1, at 47, which added article 5069–1.07(a) to the Revised Civil Statutes of Texas, was September 1, 1975, subsequent to all the instruments under consideration here. Neither party contends that this case is governed by section 1.07(a), and we express no opinion on its application to facts such as are presented here.

appeals are reversed and judgment is rendered that Tower take nothing on its claim for tax reimbursement. The judgments of the lower courts are also reversed insofar as they hold that Smart's note to Tower is not usurious, and that portion of this suit is remanded for determination of damages.