FSB v. Dorst 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-109-CV





FIRST STATE BANK, SUCCESSOR IN INTEREST TO COMMUNITY NATIONAL

BANK,


 
 APPELLANT


vs.





RONALD L. DORST AND CLARICE DORST,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT



NO. 457,644, HONORABLE JAMES R. MEYERS, JUDGE PRESIDING



 




 This is a usury case. First State Bank ("FSB"), appellant, sued Ronald and Clarice
Dorst, appellees, to recover the remaining balance on two promissory notes, each secured by a
deed of trust, and to obtain judgment allowing judicial foreclosure of the property securing the
notes. The Dorsts counterclaimed that the deeds of trust were usurious on their face. The case
was tried to the court on stipulated facts. The trial court concluded that the two deeds of trust
were usurious and rendered judgment that the notes and the liens securing them be canceled; that
the Dorsts recover their attorney's fees; and that FSB take nothing by its claim. On appeal, FSB
complains in a single point of error that the trial court erred in concluding that the deeds of trust
were usurious and in rendering judgment that FSB take nothing. We will reverse the judgment
of the trial court and render judgment that the Dorsts take nothing on their counterclaim. We will
remand the portion of the cause requesting judicial foreclosure to the trial court for further
proceedings.



BACKGROUND


 FSB is the current owner and holder of two promissory notes executed by the
Dorsts on July 12, 1982, and secured by two deeds of trust recorded in the real property records
of Travis County, Texas. The notes provided for interest at the rate of 10.875%, with an increase
to 11.875% on August 4, 1984. Both deeds of trust contained identical "sales clauses" whereby
FSB was entitled to escalate the interest rate by not more than 2% if the property was sold during
the term of the note. Neither property was ever sold. In addition, both deeds of trust contained
identical "usury savings clauses" whereby FSB disclaimed any right to receive or collect interest
in excess of the highest rate allowed by applicable law.

 The Dorsts defaulted in the performance of their obligations under the notes and
deeds of trust, and the parties agree that as of August 2, 1989, the amount of unpaid principal and
accrued interest on the notes was $62,776.79.

 FSB acknowledges in its brief to this Court that since FSB filed this suit, the Dorsts
have filed Chapter 7 bankruptcy and been discharged from any personal liability under the notes. 



DISCUSSION


 In its only point of error, FSB complains that the trial court erred in concluding that
the deeds of trust violated Texas usury statutes and in rendering judgment that FSB take nothing
by its claim. See Tex. Rev. Civ. Stat. Ann. art. 5069-1.06 (West 1987). As reflected in its
conclusions of law, the trial court concluded that the deeds of trust were usurious on their face
and that the usury savings clauses did not cure such usury. 

 The Dorsts successfully argued in the court below that the sales clause included in
each deed of trust evidenced a contract for usurious interest and, as a result, the savings clause
would not allow FSB to escape usury penalties by disclaiming an intention to do what it had
contracted to do. In essence, the Dorsts argued that the sales clause must be viewed independently
from the savings clause when determining whether the loan documents constitute a contract for
usurious interest. 

 The Dorsts' assertion that the deeds of trust are usurious on their face is based
solely on the sales clause included in both deeds of trust, which states in pertinent part: "Grantor
shall obtain Beneficiary's prior written approval of any sale of the real property herein described
. . . and Beneficiary shall have the right to escalate the interest rate at not more than 2% per
transaction . . . ." (Emphasis added.) The Dorsts rely on the general rule that a contract is
usurious as a matter of law if there is any contingency by which the lender may receive more than
the lawful rate of interest. See Smart v. Tower Land & Inv. Co., 597 S.W.2d 333, 341 (Tex.
1980); Dixon v. Brooks, 678 S.W.2d 728, 729 (Tex. App.--Houston [14th Dist.] 1984, writ ref'd
n.r.e.). The Dorsts argue that the sales clause allowing the lender to escalate the contractual
interest rate by up to 2% for each sale of the property could result in an interest rate greater than
that allowed by law. Accordingly, they argue, the unlimited nature of this clause makes the deeds
of trust usurious as a matter of law.

 As suggested by the Dorsts, it is true that if the properties were sold multiple times
and if FSB increased the interest rate 2% each time, the interest rate could potentially exceed the
rate allowed by applicable law. Thus, were we to view the sales clause in isolation and apply the
general rule regarding contingencies, we might well determine that the deeds of trust were
usurious based on this contingency provision.

 We conclude, however, that the sales clause cannot be viewed in isolation. Rather,
we must consider the contract as a whole in deciding whether it is usurious:


[W]hen the contract by its terms, construed as a whole, is doubtful, or even
susceptible of more than one reasonable construction, the court will adopt the
construction which comports with legality. It is presumed that in contracting
parties intend to observe and obey the law. For this reason the court will not hold
a contract to be in violation of the usury laws unless, upon fair and reasonable
interpretation of all its terms, it is manifest that the intention was to exact more
interest than allowed by law.



Smart, 597 S.W.2d at 340-41 (quoting Walker v. Temple Trust Co., 80 S.W.2d 935 (Tex. 1935))
(emphasis added).

 In addition to the sales clause, the deeds of trust at issue in the present case also
contain identical savings clauses, which expressly provide:


Nothing herein or in said note contained shall ever entitle Beneficiary, upon the
arising of any contingency whatsoever, to receive or collect interest in excess of
the highest rate allowed by the applicable laws on the principal indebtedness hereby
secured or on any money obligation hereunder and in no event shall Grantors be
obligated to pay interest thereon in excess of such rate.



(Emphasis added.) Texas courts, beginning with Nevels v. Harris, 102 S.W.2d 1046 (Tex. 1937),
have repeatedly acknowledged the validity of usury savings clauses and have, in appropriate
circumstances, enforced such clauses to avoid a violation of the usury laws. See Woodcrest Assoc.
v. Commonwealth Mortgage Corp., 775 S.W.2d 434, 437-38 (Tex. App.--Dallas 1989, writ
denied) (citing 49 years of case law supporting validity of savings clauses). 

 The Dorsts acknowledge that Texas courts view savings clauses favorably. They
contend, however, that the trial court's judgment is correct because the mere presence of a savings
clause in a contract will not rescue a contract that is usurious by its explicit terms. Nevels, 102
S.W.2d at 1050; Woodcrest Assoc., 775 S.W.2d at 438. In analyzing the loan documents, the
Dorsts argue that the deeds of trust are usurious by the explicit terms of the sales clause, because
the operation of the clause is unlimited. In other words, there is no cap to the interest rates FSB
may charge. Further, they argue that because the clause is usurious by its explicit terms, the
savings clause cannot operate to cure such usury.

 The Dorsts' reasoning is circular. They claim that the deeds of trust are explicitly
usurious because the savings clause may not be considered. A savings clause is ineffective,
however, only if it is directly contrary to the explicit terms of the contract. In Nevels, the
supreme court stated:


Of course we do not mean to hold that a person may exact from a borrower a
contract that is usurious under its terms, and then relieve himself of the pains and
penalties visited by the law upon such an act by merely writing into the contract
a disclaimer of any intention to do that which under his contract he has plainly
done.



Nevels, 102 S.W.2d at 1050. As a simple example, a creditor may not specifically contract for
a 30% interest rate and then avoid the imposition of usury penalties by relying on a savings clause
that declares an intention not to collect usurious interest. In contrast, under the facts of the
present case, the savings clause is not directly contrary to the explicit terms of the sales clause;
rather, the savings clause supplements and explains the intent of the parties in contracting for the
sales clause by limiting its application to nonusurious charges of interest.

 The Texas Supreme Court has indicated that a savings clause may cure an open-ended contingency provision the operation of which may or may not result in a charge of usurious
interest. Smart, 597 S.W.2d at 340-41. The Smart case involved a contract that was potentially
usurious depending on the occurrence of a contingency--default in payment on a note. Under the
terms of the note, the debtor had prepaid three years worth of interest. The creditor had
specifically contracted for retention of unearned prepaid interest in the event of acceleration. 
Depending on when the default and acceleration occurred, such retention might or might not have
resulted in the collection of usurious interest. In construing this contract, the court applied the
general rule that a contract is usurious as a matter of law if there is any contingency by which the
lender may receive more than the lawful rate of interest. However, rather than look at the clause
that allowed the creditor to retain unearned interest in isolation, the court reviewed the contract
as a whole. The court found the absence of a usury savings clause to be dispositive: 



Having affirmatively provided for the retention of unearned interest, [the creditor]
was obliged to make further provisions ensuring that the retention of this interest
would not result in a usurious transaction. Neither the note nor the deed of trust,
nor any of the other documents contains any kind of usury savings clause whatever. 
In the absence of a savings clause, we find that [the creditor's] expressed
authorization to retain excess unearned interest overcomes the presumption of
legality accorded to allegedly usurious contracts.



Smart, 597 S.W.2d at 341 (emphasis added) (citation omitted).

 This Court, too, has considered the validity of a usury savings clause in the context
of a contingency-based usury claim. See Affiliated Capital Corp. v. Commercial Credit Bank, 834
S.W.2d 521 (Tex. App.--Austin 1992, no writ). In that case, the appellant claimed that a
contingency that could possibly exact usurious interest made the contract usurious on its face and
could not be cured by a savings clause. We rejected that claim, concluding that a savings clause
will defeat a claim of usury where a contingency may or may not exact usurious interest. Id. at
526.

 Applying this same analysis to the present case, it is obvious that occurrence of the
contingency (sale of the property) would not necessarily have resulted in a usurious interest rate. 
Indeed, numerous sales would have been required before a usurious rate could even have been
possible. Because usury was not a necessary result of the occurrence of the contingency, it is
appropriate to construe the sales clause in light of the savings clause. Doing so makes clear the
parties' intention that FSB not have the right to charge usurious interest in the event of multiple
sales of the property securing the deeds of trust. The savings clause has the effect of "capping"
the potential interest rate chargeable under the sales clause. 

 We do not believe that the Dorsts could prevail on their usury claim had the deeds
of trust provided in a single sentence that "Beneficiary shall have the right to escalate the interest
rate at not more than 2% per transaction; however, in no event shall Beneficiary be entitled to
escalate the interest to a rate in excess of the highest rate allowed by the applicable law." 
Reading the sales clause and the usury savings clause together in the present case yields the same
result. Usury statutes are penal in nature and, as a result, they must be strictly construed in such
a way as to give the lender the benefit of the doubt. Steves Sash & Door Co. v. Ceco Corp., 751
S.W.2d 473, 476 (Tex. 1988); PJM, Inc. v. Walter Clark Advertising, Inc., 624 S.W.2d 282,
285-86 (Tex. App.--Dallas 1981, writ ref'd n.r.e.). Under this long-standing rule of construction,
we refuse to interpret the usury statutes so broadly as to allow imposition of the harsh usury
penalties where the creditor's only "error" was to place a limiting clause in a separate paragraph
of the loan documents instead of immediately following the contingency provision. We conclude,
therefore, that as a matter of law the deeds of trust in the present case are not usurious. We
sustain FSB's point of error.

 We reverse that portion of the trial court's judgment cancelling the notes and deeds
of trust and awarding the Dorsts attorney's fees and render judgment that the Dorsts take nothing
by their counterclaim. We also reverse that portion of the trial court's judgment decreeing that
FSB take nothing on its suit for judicial foreclosure; however, because of the paucity of
information in this appellate record regarding the Dorsts' subsequent bankruptcy proceedings, we
are reluctant to render judgment as to FSB's request for permission to judicially foreclose on the
property securing the notes. Accordingly, we will, in the interest of justice, remand that portion
of the cause to the trial court for further proceedings. See Tex. R. App. P. 81(c); U.S. Fire Ins.
Co. v. Carter, 473 S.W.2d 2 (Tex. 1971).



 

 J. Woodfin Jones, Justice

[Before Chief Justice Carroll, Justices Jones and Kidd]

Reversed and Rendered in Part; Reversed and Remanded in Part

Filed: December 23, 1992

[Publish]