**AFFIRM in part, REVERSE and RENDER; and Opinion Filed May 14, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00033-CV

**DALLAS CITY HOMES, INC., Appellant**
**V.**
**DALLAS COUNTY, CITY OF DALLAS, DALLAS INDEPENDENT SCHOOL DISTRICT, DALLAS COUNTY SCHOOL EQUALIZATION FUND, PARKLAND HOSPITAL DISTRICT, AND DALLAS COUNTY COMMUNITY COLLEGE DISTRICT, Appellees**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 11-30230**

## MEMORANDUM OPINION
Before Justices Lang-Miers, Myers, and Lewis
Opinion by Justice Lewis

Appellant, Dallas City Homes, Inc. ("DCH"), appeals the trial court's award in favor of appellees, Dallas County, City of Dallas, Dallas Independent School District, Dallas County School Equalization Fund, Parkland Hospital District, and Dallas County Community College (the "Taxing Authorities"). In three issues, DCH complains the trial court erred (1) by failing to find DCH was subjected to an illegal tax, (2) by finding sovereign immunity barred DCH's claim to recover an illegal tax, and (3) by awarding the Taxing Authorities payment of their court costs and abstractor's fees. We affirm the trial court's judgment in part, reverse the trial court's award of court costs and abstractor's fees, and render judgment that the Taxing Authorities take nothing.

DCH is a non-profit corporation that develops low-income housing. In 2004, DCH granted a deed of trust for real property located at 400 & 404 N. Lancaster Road in Dallas, Texas (the "Property"), to secure a real estate lien note payable to the City of Dallas (the "City"), for the purpose of creating federally funded affordable housing. The deed of trust with the City was executed pursuant to the Dallas Community Housing Development Organization Program. DCH agreed to begin construction on or before December 1, 2004, and complete construction by March 31, 2006.

In September 2010, the City notified DCH it was in default for failure to complete construction on the Property by the agreed deadline. The amount outstanding under the loan was in dispute. After discussions between the parties, DCH decided it should allow the City to foreclose on the loan.

In February 2011, the Taxing Authorities initiated this underlying suit to collect delinquent tax pursuant to section 33.41 of the Texas Tax Code. The petition claimed DCH owed $8,187.36 in taxes for failure to pay taxes on the Property between 2006 and 2010. According to testimony provided by Karen Brooks-Crosby, president of DCH, the receipt of notice of this suit was the first time DCH became aware it was delinquent on the taxes. The Taxing Authorities introduced evidence of delinquent tax statements that showed taxes were paid on the Property while it was owned by DCH between 2004 and 2006.

During the pendency of this suit, in September 2011, the City foreclosed on its lien on the Property and the City bought the Property at the foreclosure sale. After the foreclosure, DCH filed a motion for summary judgment claiming the City had taken possession of the Property and could no longer seek the allegedly delinquent taxes because the taxes should have been

accounted for when the Property was foreclosed upon. The trial court ultimately denied DCH's motion for summary judgment.[1]

In June 2012, Dallas County (the "County") began withholding Section 8 funds relating to other properties from DCH pursuant to a signed Dallas County Department of Health and Human Services Administration's Housing Choice Voucher Program (the "Voucher Program") which states:

Withholding for Tax Delinquent Landlords: Payments to landlords that are delinquent on their property taxes will have their payments withheld to satisfy the debt to the County. Payments withheld will be applied to the debt and will commence in full once the debt is satisfied.

DCH subsequently filed a counter-claim asking for declaratory judgment that the delinquent taxes were extinguished when the City purchased the Property at the foreclosure sale and the County's withholding of DCH's Section 8 funds was an "illegal tax." DCH also sought to recover the "illegal taxes" that were withheld pursuant to the Voucher Program. In response to DCH's counter-claims, the Taxing Authorities filed a special appearance, joint plea to the jurisdiction, and motion to dismiss for lack of jurisdiction claiming the Taxing Authorities were protected under sovereign immunity which were ultimately denied by the trial court.

The parties tried the case to the bench in a one-day trial and the trial court's judgment states, "the taxes, penalties, and interest which were the subject of this suit have been paid to the Plaintiff(s) and any intervening taxing units but the costs and/or expenses of suit remain unpaid in the amounts hereinafter adjudge[d] due." The court further awarded the Taxing Authorities court costs of $348.00 and abstractor's fees of $700.00. The court further ordered the "Defendant take nothing." DCH now appeals the trial court's judgment.

---

[1] We note, the record does contain a copy of the September 7, 2011, foreclosure sale deed showing the City paid $85,185.06 for the Property. The record does not reflect what other liens may have been on the property at the time of foreclosure or what happened to those liens.

DCH initially challenges the trial court's findings of fact and conclusions of law and contends the Taxing Authorities' withholding of DCH's Section 8 funds was an "illegal tax." Specifically, DCH asserts the withholding of the Section 8 funds was an illegal tax because (1) the language in the deed of trust provided the City's foreclosure of the property extinguished DCH's delinquent taxes, and (2) independent of the language contained in the deed of trust, the City's purchase price at the foreclosure included all delinquent taxes on the Property, thereby extinguishing DCH's obligations for delinquent taxes.

We review the legal or factual sufficiency of the evidence supporting a trial court's findings of fact by the same standard as applied by a court reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a special issue. *Hall v. Villarreal Dev. Corp.*, 522 S.W.2d 195, 195–96 (Tex. 1975); *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.). In reviewing a factual sufficiency challenge, we consider and weigh all the evidence in support of and contrary to the finding and will set aside the verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). In evaluating the legal sufficiency of the evidence to support a finding, we must determine whether the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in the conclusions. *Columbia Med. Ctr. Subsidiary, L.P. v. Meier*, 198 S.W.3d 408, 414 (Tex.App.—Dallas 2006, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). Anything more than a "scintilla of evidence" is legally sufficient to support the finding. *Cont'l Coffee Prods., Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 147 (Tex. App.—Dallas 2012, no pet.). We must now consider whether the evidence supports the trial court's findings.

DCH argues the trial court erred by finding "[T]he delinquent ad valorem taxes remained unpaid after the deed foreclosure sale took place" and the "City of Dallas did not have an obligation to pay the delinquent taxes [at the foreclosure] as it purchased the property subject to the outstanding tax lien." DCH claims the taxes in this case were illegal because the Taxing Authorities recovered the taxes twice utilizing *two* extra-judicial methods: first by foreclosure on the Deed of Trust, and again by withholding DCH's Section 8 funds. DCH argues that because the taxes were "collected or extinguished" when the City foreclosed on the Property, the seizing of the Section 8 funds was the equivalent of an "illegal fee" for which DCH should not be liable.

We find no evidence in the record showing the taxes were "collected or extinguished" by the Taxing Authorities more than one time. There is evidence that the City foreclosed on the Property under its deed of trust and the City bought the Property at the foreclosure sale. And we agree with DCH, the language of the deed of trust does state the purpose of the deed is:

> securing the payment of the indebtedness . . . [for] any further loans which may be made or have already been made by the City of Dallas to [DCH] or any Obligated Party, together with all other direct, indirect, contingent, primary or secondary indebtedness of any character now or hereafter owing or to be owing by [DCH] or any Obligated Party to the City of Dallas regardless of how evidenced or incurred . . . .

However, we do not find any evidence in the record of exactly what was owed under the loan agreement between DCH and the City at the time of the foreclosure sale or any evidence of what happened to any proceeds that may have been in excess of the balance owed on the loan with the City. Also, the record is silent as to expenses incurred for foreclosure by the City. Under the default and foreclosure provisions, the deed of trust provides:

> any proceeds of any sale . . . shall be applied in the following order of priority: (i) first, to the payment of all costs and expenses of taking possession of the Property . . . including . . . the payment of any and all Impositions, liens, security interests or other rights, titles or interests equal or superior to the lien and security interest of this Deed of Trust . . . .

Further, the only evidence in the record of any tax payments being made on the Property shows the payments were made in June and July of 2012, which is when the County withheld the Section 8 funds as allowed under the Section 8 Voucher Program Agreement. Given the record in this case, we conclude the evidence supports the trial court's finding the delinquent ad valorem taxes remained unpaid after the deed foreclosure sale took place. Further, without any evidence of any proceeds after the foreclosure sale, we cannot conclude the City had an obligation to pay the delinquent taxes as it purchased the property subject to the outstanding tax lien. Consequently, DCH has failed to meet its burden of establishing the money withheld from the Section 8 funds was the equivalent of an illegal tax or fee collected by the Taxing Authorities.

DCH further argues, "Even without the language of the Deed of Trust, Texas law barred the City from seeking delinquent taxes after the foreclosure." DCH provides this Court with case law supporting its contention that a current mortgagee on a foreclosed property is responsible for paying any delinquent taxes. *See Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 339 (Tex. 1980); *Wood v. Henry S. Miller Co.*, 597 S.W.2d 332, 333 (Tex. 1980); *Jackson v. Stonebriar P'ship*, 931 S.W.2d 635, 639 (Tex. App.—Dallas 1996, writ denied). The cases that DCH relies upon to argue the City was barred from withholding the Section 8 Funds are distinguishable. All of the cases relied on by DCH are subrogation suits brought for the purpose of reimbursement for taxes paid by a mortgagee after foreclosure. These cases all discuss first, whether or not a contractual relationship between the mortgagor and mortgagee gave rise to a personal debt for taxes and secondly, whether principles of equitable subrogation entitle the mortgagee to obtain a personal judgment. This case is not a subrogation suit; appellees are not seeking a personal judgment for reimbursement for taxes paid. Also, in each case relied on by DCH, the courts determined no contractual relationship existed which gave rise to a personal debt by the

mortgagor. However, the record in this case does support a contractual relationship allowing for the alternative means to collect for delinquent taxes between DCH and the County. DCH does not dispute the authority of the County to withhold Section 8 funding to satisfy delinquent taxes under the Voucher Program. DCH only disputes that the taxes were *still delinquent* at the time of the withholding and we have already addressed the lack of evidence tending to support DCH's argument. We therefore overrule DCH's first issue complaining it was subject to an illegal tax. Because we do not find the taxes to be an illegal tax or fee, we need not address whether illegal taxes were paid under duress or whether DCH's claims are barred by sovereign immunity.[2]

In its third issue, DCH contends the Taxing Authorities are not entitled to payment of their court costs and abstractor's fees because the Taxing Authorities were not a "successful party" as required by statute. The Taxing Authorities failed to respond to DCH's assertion and only claim, "[t]he suit was properly filed as taxes were due and owing at the time of filing. . . . Any argument to the contrary is simply gibberish and nonsensical." We review a trial court's allocation of costs under an abuse of discretion standard. *Gumpert v. ABF Freight Sys., Inc.*, 312 S.W.3d 237, 239 (Tex. App.—Dallas 2010, pet. denied).

In its judgment, the trial court awarded $348 for court costs and $400 for abstractor's fees. The tax code allows for recovery of costs and expenses in a suit to collect a delinquent tax. *See* TEX. TAX CODE ANN. § 33.48 (West Supp. 2013) (each expense "is a charge against the property subject to foreclosure in the suit and shall be collected out of the proceeds of the sale of the property."). However, DCH argues the Taxing Authorities should not be allowed to recover their fees because they were not a "successful party." *See* TEX. R. CIV. P. 131 ("The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided"). The trial court may, however, for good cause stated on the record, award costs other

---

[2] *See* TEX. R. APP. P. 47.1.

than as provided by law or the rules. TEX. R. CIV. P. 141. The trial court did not state on the record any reason for awarding costs in this case to the Taxing Authorities.

When the Taxing Authorities initiated this suit to collect delinquent taxes in February 2011, they did so pursuant to the Texas Tax Code. In November 2011, the Taxing Authorities filed a motion for continuance citing the reason for a continuance was "in order to rectify chain of ownership and necessary party defendants." Then, outside the realm of this suit, the City foreclosed, bought, and became the owner of the Property in September 2011. Next, a joint motion for continuance was filed in April 2012, requesting a continuance in order to "work through the ownership issues regarding the property," which at that time was owned by the City. In June 2012, after the City became the owner of the Property, the County withheld Section 8 funds from DCH and paid the delinquent taxes on the property. It is clear from these facts the Taxing Authorities did not need to initiate this suit in order to collect taxes owed by DCH. The foreclosure of the Property was not conducted as a tax foreclosure, but a foreclosure pursuant to the deed of trust with the City. Nor did the Taxing Authorities utilize this suit to satisfy the delinquent taxes by DCH as required by the tax code. *See* TEX. TAX CODE ANN. § 33.48. A "successful party" under the statute governing recovery of costs is one who obtains judgment of a competent court vindicating a civil right or claim. *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 176 (Tex. 2013); *see also* TEX. R. CIV. P. 131. Because the Taxing Authorities did not use this suit to foreclose on the property or to collect the funds from DCH to pay the delinquent taxes, we conclude the trial court abused its discretion in awarding court costs, whether pursuant to rule 131 of the Texas Rules of Civil Procedure or section 33.48 of the tax code. *See* TEX. R. CIV. P. 131; *see also* TEX. TAX CODE ANN. § 33.48; *Gano v. City of Houston*, 834 S.W.2d 585, 587 (Tex. App.—Houston [14th Dist.] 1992, pet. denied) (taxing units not

–8–

entitled to attorney's fees when tax burden was satisfied prior to trial). We sustain appellant's third issue.

We reverse the trial court's judgment awarding the Taxing Authorities court costs of $348.00 and abstractor's fees of $700.00, and we render judgment that the Taxing Authorities take nothing. In all other respects, we affirm the trial court's judgment.

/David Lewis/
DAVID LEWIS
JUSTICE

130033F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DALLAS CITY HOMES, INC., Appellant

    V.

DALLAS COUNTY, CITY OF DALLAS, DALLAS INDEPENDENT SCHOOL DISTRICT, DALLAS COUNTY SCHOOL EQUALIZATION FUND, PARKLAND HOSPITAL DISTRICT, AND DALLAS COUNTY COMMUNITY COLLEGE DISTRICT, Appellees

On Appeal from the 44th Judicial District Court, Dallas County, Texas
Trial Court Cause No. 11-30230.
Opinion delivered by Justice Lewis. Justices Lang-Miers and Myers participating.

In accordance with this Court's opinion of this date, we **REVERSE** that portion of the trial court's judgment awarding court costs of $348 and abstractor's fees of $700 and **RENDER** judgment that Appellees, DALLAS COUNTY, CITY OF DALLAS, DALLAS INDEPENDENT SCHOOL DISTRICT, DALLAS COUNTY SCHOOL EQUALIZATION FUND, PARKLAND HOSPITAL DISTRICT, AND DALLAS COUNTY COMMUNITY COLLEGE DISTRICT take nothing on their claim for court costs and abstractor's fees. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal. The District Clerk of Dallas County is directed to release the full amount of the balance of the cash deposit in lieu of cost bond to appellant DALLAS CITY HOMES, INC.

Judgment entered this 14th day of May, 2014.

/David Lewis/
_____
DAVID LEWIS
JUSTICE