**Nathalie PEVETO, Appellant,**

v.

**Joseph D'ENTREMONT, Appellee.**

**No. 09–93–272 CV.**

Court of Appeals of Texas, Beaumont.

Submitted Oct. 20, 1994.

Decided June 8, 1995.

Rehearing Overruled June 22, 1995.

---

Before WALKER, C.J., and BROOKSHIRE* and BURGESS, JJ.

## OPINION

BURGESS, Justice.

This is an appeal from a summary judgment. Joseph D'Entremont and Joe W. Bolton, Jr., conveyed a commercial building to Nathalie Peveto, who executed a non-recourse wraparound note and deed of trust. D'Entremont filed suit for injunction and attachment of rents Peveto's tenants were paying on the property. The live pleadings at the time of the summary judgment hearing consisted of: 1) a tort claim for conversion of rentals collected by Peveto between the date she defaulted on the note by failing to pay the property taxes and the date of entry of an agreed order attaching the rents; 2) a claim for breach of contract, including past due installments on the note, unpaid property taxes, interest, and attorney fees; and 3) Peveto's counterclaim for attorney fees.

In 1991, the trial court denied motions for summary judgment filed by both parties. D'Entremont filed a second motion for summary judgment in 1993. The trial court granted summary judgment as to the conversion claim. The summary judgment is silent both as to D'Entremont's breach of contract claim and any pleadings or motions by Peveto. The court's summary judgment does not contain a "Mother Hubbard" clause directing that all relief not granted therein is expressly denied. Although D'Entremont's motion for summary judgment requested judgment on both his contract and tort claim, the judgment, which considered only the "Plaintiff's Second Amended Motion for Summary Judgment," awarded only the converted rentals. Peveto raises four points of error on appeal.

■■■ Since the breach of contract claim and the counterclaim for attorney fees were neither granted in the summary judgment, nor dismissed by the parties, nor tried on their merits, we must conclude that all of the

Charles Gordon Reed, Beaumont, for appellant.

Richard N. Evans, II, Evans & Evans, Beaumont, for appellee.

* Justice, Retired, Court of Appeals, Beaumont, sitting by assignment pursuant to TEX.GOV'T CODE

ANN. § 74.003(b) (Vernon 1988).

issues before the trial court were not brought to a final resolution. An appeal may only be taken from a final judgment which disposes of all issues and parties. The denial of a summary judgment is interlocutory. *New York Underwriters Ins. Co. v. Sanchez*, 799 S.W.2d 677 (Tex.1990). There is no language in the summary judgment which would render it appealable pursuant to the rule expressed in *Mafrige v. Ross*, 866 S.W.2d 590 (Tex.1993). We hold the summary judgment entered by the trial court is an interlocutory judgment from which no appeal may be had absent disposition of the remaining issues or an order of severance. Accordingly, we dismiss the appeal for want of jurisdiction.

APPEAL DISMISSED.

BROOKSHIRE, Justice (Retired), dissenting.

This dissent is filed with earnest respect. This is an appeal from the granting of a summary judgment in a conversion suit, inter alia, for rental income in favor of the appellee, Joseph D'Entremont. Other relief was sought by appellee. The appellant had defaulted on her obligations as set out in the Installment Vendor's Lien Note and the Deed of Trust by failing to pay taxes due and owing on the property at 6410 Wellington Place as she had agreed to do in the Deed of Trust. Ms. Peveto also failed to turn over rental income she received from lessees on this property. Ms. Peveto was required under Section 7 of the General Provisions of the Deed of Trust to turn over all rental income received from the premises after her default which she did not do.

In the first instance, both the appellant and the appellee moved for summary judgment. These first motions were denied; later appellee filed a second, amended (enlarged) motion for summary judgment which was granted. Appellant made no response to the second motion of appellee. The district court judge awarded summary judgment in favor of the appellee in the amount of $6,800 for conversion of rental monies but refused to grant the appellee's request for reimbursement for payment of property taxes and for reasonable attorney's fees. The appellant now appeals from the granting of the summary judgment and the appellee brings two cross-points.

The appellant presents for this Court's consideration four points of error. They read as follows:

POINT OF ERROR NUMBER ONE

The Trial Court erred in granting the Summary Judgment when it ruled that Appellee could recover rent from Appellant before Appellee took any action to foreclose on his lien.

POINT OF ERROR NUMBER TWO

The Trial Court erred when it did not construe the note and the Deed of Trust documents executed at the same time, and for the same purpose, and in the course of the same transaction as one instrument, *Jones v. Kelley*, 614 S.W.2d 95 (Tex.1981).

POINT OF ERROR NUMBER THREE

The Trial Court erred when it interpreted the language of the Deed of Trust as an absolute assignment, when such conclusion has no support in case law.

POINT OF ERROR NUMBER FOUR

The Trial Court erred in granting the Summary Judgment for $6,800.00 when there was no evidence in the record to support the Court's finding of an amount of damages.

### Factual Background

On February 28, 1989, the appellant Peveto purchased 6410 Wellington Place in Beaumont, Jefferson County, from the appellee and Joe Bolton. Mr. Bolton is not a party to this appeal. To secure the Installment Vendor's Lien Note given by the appellant *for the purchase money*, Ms. Peveto executed a Deed of Trust which included an absolute assignment of rental income from the property to D'Entremont and Bolton.[1] On the

---

1. In the Installment Vendor's Lien Note there is a condition which Ms. Peveto signed and agreed to and which reads "NOTWITHSTANDING ANYTHING *HEREIN CONTAINED* TO THE CONTRARY, THE UNDERSIGNED SHALL HAVE *NO PERSONAL LIABILITY FOR THE*
PAYMENT OF THIS NOTE, PRINCIPAL OR INTEREST, IT BEING AGREED AND UNDERSTOOD THAT THE HOLDER WILL LOOK ONLY TO THE REAL PROPERTY, INCLUDING PROCEEDS OF SALE OF SUCH PROPERTY, GIVEN AS COLLATERAL HEREFOR. THIS IS

same date that the appellant executed this Vendor's Lien Note, she also executed a Deed of Trust to secure the payment of her other debts, duties and obligations. These duties and obligations were outside of the Vendor's Lien Note. In the Deed of Trust there is an absolute assignment provision for rental income under General Provisions Section 7 being this:

Grantor assigns to Beneficiary *absolutely,* not only as collateral, *all present and future rent and other income and receipts from the property.* Leases are not assigned. *Grantor warrants the validity and enforceability of the assignment.* Grantor may as Beneficiary's licensee collect rent and other income and receipts *as long as Grantor is not in default under the note or this deed of trust.* Grantor will apply all rent and other income and receipts to payment of the note and performance of this deed of trust, but if the rent and other income and receipts exceed the amount due under the note and deed of trust, Grantor may retain the excess. *If Grantor defaults in payment of the note or performance of this deed of trust, Beneficiary may terminate Grantor's license to collect and then as Grantor's agent may rent the property if it is vacant and collect all rent and other income and receipts.... Beneficiary may exercise Beneficiary's rights and remedies under this paragraph without taking possession of the property.... Beneficiary is not required to act under this paragraph, and acting under this paragraph does not waive any of Beneficiary's other rights or remedies.* (emphasis added)

Especially significant and noteworthy is the plain wording in the Installment Vendor's Lien Note that unambiguously provides that Peveto shall have *no personal liability for the payment of the note, its principal or interest.* This proviso of non-liability favoring Peveto is limited to the *obligation and liability to pay the Vendor's Lien Note.* The Note by its own language does not endeavor the vitiate the other, different, and separate obligations of the Grantor, Peveto, as clearly

A NON–RECOURSE NOTE. Nathalie Peveto d/b/a Nathalie Peveto Real Estate *will not be liable in any action on the note and there will be*

set out in the Deed of Trust. The "no personal liability" clause pertains only the "the payment of this note." To validate and buttress this construction of the Note, the coup de grace is: "This is a non-recourse note Nathalie Peveto ... will not be liable on any action on the note and there will be no deficiency if there is a foreclosure." The deficiency necessarily refers to the note. There exists in the note no deficiency concept or defense as to ad valorem taxes. The non-liability applies to the note—not to the ad valorem taxes.

The Deed of Trust specifically permitted the appellant to collect rentals as long as she was not in default but it recited that the assignment of rental was absolute, rather than merely as collateral. The Deed of Trust provides:

GRANTOR'S OBLIGATIONS

Grantor agrees to:

1. keep the property in good repair and condition;

2. pay all taxes and assessments on the property when due;

3. preserve the lien's priority as it is established in this deed of trust;

4. maintain, in a form acceptable to Beneficiary, an insurance policy that:

a. covers all improvements for their full insurable value as determined when the policy is issued and renewed, unless Beneficiary approves a smaller amount in writing;

b. contains an 80% coinsurance clause;

c. provides fire and extended coverage, including windstorm coverage;

d. protects Beneficiary with a standard mortgage clause;

e. provides flood insurance at any time the property is in a flood hazard area; and

f. contains such other coverage as Beneficiary may reasonably require;

*no deficiency if there is a foreclosure."* (emphasis added)

5. comply at all times with the requirements of the 80% coinsurance clause;

6. deliver the insurance policy to Beneficiary and deliver renewals to Beneficiary at least ten days before expiration;

7. keep any buildings occupied as required by the insurance policy; and

8. if this is not a first lien, pay all prior lien notes that Grantor is personally liable to pay and abide by all prior lien instruments.

## BENEFICIARY'S RIGHTS

1. Beneficiary may appoint in writing a substitute or successor trustee, succeeding to all rights and responsibilities of Trustee.

2. If the proceeds of the note are used to pay any debt secured by prior liens, Beneficiary is subrogated to all of the rights and liens of the holders of any debt so paid.

3. Beneficiary may apply any proceeds received under the insurance policy either to reduce the note or to repair or replace damaged or destroyed improvements covered by the policy.

4. If Grantor fails to perform any of Grantor's obligations, Beneficiary may perform those obligations and be reimbursed by Grantor on demand at the place where the note is payable for any sums so paid, including attorney's fees, plus interest on those sums from the dates of payment at the rate stated in the note for matured, unpaid amounts. The sum to be reimbursed shall be secured by this deed of trust.

5. If Grantor defaults on the note or fails to perform any of Grantor's obligations or if default occurs on a prior lien note or other instrument, and the default continues after Beneficiary gives Grantor notice of the default and the time within which it must be cured, as may be required by law or by written agreement, then Beneficiary may:

a. declare the unpaid principal balance and earned interest on the note immediately due;

b. request Trustee to foreclose this lien, in which case Beneficiary or Beneficiary's agent shall give notice of the foreclosure sale as provided by the Texas Property Code as then amended; and

c. purchase the property at any foreclosure sale by offering the highest bid and then have the bid credited on the note.

The legal title to the property was in the name of the appellant as Grantor. As Grantor, it was Ms. Peveto's obligation and duty, inter alia, to keep the property in good repair, good condition and to pay all taxes and assessments on the property when due. Thus it is clear that the Deed of Trust imposed additional duties on appellant other than those in the note. Were we to adopt the appellant's contentions, the Deed of Trust would be made void and of no force or effect; it would become a nullity.

### *Standard of Review*

The standard of review on appeal in summary judgments was well established in *Nixon v. Mr. Property Management*, 690 S.W.2d 546 (Tex.1985). In *Nixon*, the Supreme Court set out the following: (1) the movant has the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant is taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant and any doubt resolved in non-movant's favor. *Id.* at 548. Evidence which favors the movant will be considered only if it is uncontroverted. But the non-movant's posture must be procedurally correct.

Upon reviewing the summary record, *if the record establishes as a matter of law* that there is no genuine issue of material fact, then we are to affirm the judgment. Rulings on the law can be reviewed. If, however, we find that there exists a genuine issue of material fact, then this Appellate Court must remand the cause. In the appeal at bar, I would hold there is no genuine issue of material fact. Provision 7 of the Deed of Trust clearly states that upon default all rental

proceeds revert automatically to Beneficiary absolutely. The Beneficiary is appellee. The appellant agreed to this contractual condition without reservation.

### On the Assignment of Rental

The appellant urges this Court to follow *Taylor v. Brennan,* 621 S.W.2d 592 (Tex. 1981), as the controlling authority. In *Taylor v. Brennan,* the court concluded that the language and provisions in the security agreement manifested an intention by the parties to create a pledge of rentals rather than an absolute assignment. In *Taylor v. Brennan* the very different language was as follows:

> NOW, THEREFORE, in order *further to secure* the payment of the indebtedness of the Borrower to the Lender, ... the said Borrower does hereby sell, assign, transfer and set over unto the Lender all of the rents, issues and profits of the aforesaid mortgaged premises. (emphasis added)

*Brennan* is not applicable here; *Brennan* is not controlling. Clearly, in the case at bar, it was the intent of the parties when they entered into this absolute rental assignment clause that they wanted to transfer title to and ownership of the rentals automatically upon any default by Peveto. The plain wording of the instant Deed of Trust so mandates. There was no need to take any type of legal action such as to institute foreclosure proceedings. Points of error number one and three should be overruled. The case law on point three is dealt with below.

### On the Non–Recourse Clause in the Promissory Note

On submission, the appellant contends that the non-recourse clause supersedes the absolute assignment of the rentals provision in the Deed of Trust. I must disagree. Any retention of rentals by appellant, *after her admitted default,* was conversion of the rents. The non-personal liability provision, which the appellant relies on, could not protect or shield the appellant from conversion of rentals. Simply stated, after her clear default, Peveto had no title thereto. Section 7 of the General Provisions Deed of Trust confers additional duties on appellant and confers additional rights and privileges on appellee. The additional duties and rights are valid and subsisting even when read in connection with the promissory note. Peveto's obligations in the Deed of Trust are clearly in addition to those in the note. By its own wording, the non-liability language in the note is limited to and applies to a deficiency on the note itself upon foreclosure or otherwise. But this note cannot be read and construed by itself in a vacuum; this note must be read in harmony with the Deed of Trust. Hence, the wording of the note does not affect or diminish Peveto's covenants and obligations under the Deed of Trust. The note itself, by its own terms, resolves this issue. I would overrule the second point of error of the appellant.

### Appellee's Cross–Points

The appellee alleges two cross-points. They read: (1) the trial court erred in not awarding reasonable and necessary attorney's fees to the appellee, and (2) the trial court erred in failing to award appellee reimbursement for property taxes. As to cross-point No. 2, I agree that the appellee should be reimbursed for the property taxes he paid for the years 1990 and 1991 which amounted to $3,030.96 plus interest. The record shows, as a matter of law, that appellee is entitled to recover these taxes. Therefore, I conclude that the trial court judgment should and must be modified to include the $3,030.96 plus interest to fully reimburse appellee for the ad valorem property taxes. Pre-judgment and post-judgment interest must be awarded thereon to appellee. Pre-judgment and post-judgment interest are pleaded by plaintiff as well as attorney's fees.

As to cross-point No. 1, Tex.Civ.Prac. & Rem.Code Ann. § 38.001 (Vernon 1986) allows for the recovery of attorney's fees if claim is based on an oral or written contract. All that is required is that the award of attorney's fees is to be reasonable and necessary under the circumstances of the case considering the nature of the suit, the judgment, and reliefs that were sought. Peveto agreed to pay attorney's fees in the Deed of Trust. The summary judgment proof supporting the attorney's fees for one-third of

the total recovery is sufficient to award the appellee that stated amount. Therefore, I conclude that the judgment should be modified further and additionally to include the one-third amount of the total recoveries of appellee for reasonable and necessary attorney's fees as gauged by the total actual damages and total recoveries.

### *The Procedural Background*

The trial court acted upon and entered a judgment based on the appellee's *second amended motion for summary judgment.* Previous to this second motion for summary judgment filed by appellee, the record clearly reflects that each party respectively had previously filed a *first motion* for summary judgment. The trial bench overruled each *first motion for summary judgment.* Appellant, Peveto, suffered crucial, adverse waivers to come into play as to the appellee's *second motion for summary judgment.* Appellant had failed to file affidavits, favorable deposition testimony, or other responses to the second motion for summary judgment of appellee in the trial court. Simply put, appellant filed no response to the second motion.

The record reflects that on November 20, 1991, the trial court denied a motion for summary judgment filed in behalf of the appellant and also a first motion for summary judgment filed by the appellee.

Subsequent to that action in November of 1991, D'Entremont filed a second amended motion for summary judgment which was properly presented and argued and urged before the trial bench. This second motion for summary judgment of appellee was partially granted. The judgment decreed that the appellee should recover the rentals received by the appellant on the property in question in the sum of $6,800.

The judgment was to be augmented by pre-judgment interest at the rate of 10 percent compounded annually from September 19, 1991, the date the suit was filed to the date that summary judgment was signed. Post-judgment interest was awarded at the rate of 10 percent. Interest was to be computed on an annual basis as simple interest.

The failure to award attorney's fees and recovery of taxes was error. No attorney's fees were allowed. No recovery for taxes paid by appellee was awarded. *Indeed, the only affidavit presented by appellant at the trial court level was attached to her own first and only motion for summary judgment,* which was denied below; it thereafter lacked efficacy. Thus appellant relied on her pleadings. Her pleadings were not summary judgment proof.

### *The Wording of the Crucial Deed of Trust*

Under the clear, forceful, and unambiguous language of the Deed of Trust, the appellant's breach thereof resulted in an automatic termination of her permit or license to collect the rentals from the property. *Nor does the Deed of Trust require the Beneficiary to first apply the rentals received on the property to the installment payments of the vendor's lien note. The Beneficiary instead is to make the first application of the rentals to the expenses incurred and cost or expense of exercising* the Beneficiary's Rights and remedies under the documents and then and thereafter (but only then and thereafter) to the grantor's obligations under the installment note and the Deed of Trust involved *in the order of priorities to be determined by the Beneficiary*—the appellee; and appellee so pleaded and proved.

The governing section, No. 7, makes it clear that the Beneficiary *is not required to act under Section 7.* The language of Section 7 provides that for a breach of the Deed of Trust, there *will result an automatic termination of the grantor's right to collect the rentals.* Clearly under the language of the Deed of Trust, *the title to and the ownership of the rentals was assigned absolutely to the* plaintiff, as Beneficiary, by an absolute assignment and not merely as collateral to secure the note or as a pledge. Appellant simply had no title or ownership interest or right to possession after her acknowledged default.

The absolute, outright assignment applied to all present and future rent and other income and receipts from the property. The assignment itself clearly manifests that it does not require any affirmative action on

the part of the Plaintiff–Beneficiary in order for him to be entitled to the rentals *as the assignment constitutes an actual transfer of title and ownership. See Federal Deposit Insurance Corp. v. International Property Management, Inc.,* 929 F.2d 1033 (5th Cir. 1991).

United States Circuit Judge King, *applying Texas law, distinguished Taylor v. Brennan, and wrote that the Texas Supreme Court in Taylor noted that Texas adheres in certain cases to the lien theory of mortgages.* Under this theory, the mortgagee is not the owner of the property and is not *ordinarily entitled to its possession, rents, profits, or receipts.* As a necessary consequence, mortgagees customarily assign to themselves absolutely the mortgagor's interest in all rents falling due after the date of the mortgage as an additional asset. *Id.* Such an absolute assignment of rents and its complete enforcement is proper, legal, and appropriate after a default. After default, as here, mortgagee has full enjoyment and usage of the rents. Of course, United States Circuit Judge King is not to be confused with State District Court Judge Jack King, who signed the instant summary judgment.

Thus, in construing certain *limited (not absolute) assignment of rental clauses,* our Texas courts generally have followed the common-law rule that an assignment of rents does not become operative until the mortgagee obtains possession of the property, impounds the rents, or secures the appointment of a receiver, or takes some other similar action. But the assignment here is very different. Indeed the assignment here is not limited.

However, it is clear, *as is the case before us,* that the parties may agree by contract to an assignment of rents that actually operates to transfer the rights to the rentals automatically upon the happening of any specific condition such as a default. *Taylor,* 621 S.W.2d at 594. Such an assignment of the rentals is referred to and known as an absolute assignment. These absolute assignments do not create a mere security interest; but they instead pass actual title and ownership to the rents. *See and compare In re Ventura–Louise Properties,* 490 F.2d 1141 (9th Cir. 1974).

Therefore the borrower, appellant Peveto here, under an absolute assignment immediately and actually transfers (upon default) title of the rents to the lender. She only had a temporary, mere privilege to receive those rents until she (Peveto) defaults. Under this record, as a matter of law, there exists a clear default admitted to by the appellant in her sworn deposition. Appellant failed to pay the taxes. She made an admission against interest as well as an admission in this regard. Thus, it is clear that the Beneficiary's rights arise immediately upon default by way of the absolute assignment.

As noted above and to be restressed here, Paragraph 7 of the Deed of Trust mandatorily provides that: "Grantor assigns to Beneficiary absolutely, not only as collateral, all present and future rent and other income and receipts from the property."

Thus, no affirmative action is required on the part of the plaintiff/appellee.

### Appellant's Pleadings

Appellant, Peveto, did file a pleading germane to the appellee's first motion for summary judgment to which was attached a jurat. However, this jurat and affidavit were in response only to the first motion for summary judgment of appellee. In the so-called affidavit, appellant sets out legal conclusions concerning her "business homestead" without any facts to establish the same. The appellant-verifier was not an attorney. Other fatal defects existed therein and the pleadings and affidavit were properly objected to by appellee even though verified pleadings are not proper summary judgment proof in this type of proceeding.

Furthermore, the pleadings though verified did not comport to TEX.R.CIV.P. 166a. The appellant's pleadings and faulty affidavit also fail to measure up to Rule 166a(f), lacking the requirements of competent personal knowledge and admissibility as evidence. The affiant was not qualified to make an affidavit about exempting a building as a business homestead, or failure to state a claim upon which relief can be granted, or

failure to join a party or that there are not proper parties before the trial court. The trial bench was not required to consider the same; the trial bench should not have considered the fatally flawed affidavit. The affiant was not competent to testify to legal matters, questions and conclusions. There is no showing that the affiant was competent and qualified to execute her affidavit. TEX.R.CIV. PROC. 166a(f).

Appellant failed to file a response to the second motion of appellee for summary judgment. This second motion was heard. Appellant in that regard had simply failed to bring forth any proper summary judgment proof or evidence to destroy or rebut or diminish the appellee's proof. *See and compare State Board of Insurance v. Westland Film Industries,* 705 S.W.2d 695 (Tex.1986).

Appellant's points of error numbers one and four are based on certain alleged matters or statements made in her brief that were not presented in the trial court below. It must be stressed that D'Entremont's *second motion for summary judgment was based on two separate causes of action, one being a breach of contract and the second being conversion and D'Entremont pleaded his cause of action under the Deed of Trust.* Appellant has not properly attacked by response or proof the summary judgment on either the theory of breach of contract or of conversion and has thus waived any complaint of recovery based on these grounds. As stated above, appellant failed to heed Rule 166a. *See State Board of Insurance v. Westland Film Industries,* 705 S.W.2d at 696. *See and compare Malooly Brothers, Inc. v. Napier,* 461 S.W.2d 119 (Tex.1970). Affidavits, depositions, and documents properly before us prove appellee's right to recover on these theories and causes of action. Appellant cannot now for the first time at this level of appeal raise a new, novel, issue of material fact. *See State Board of Insurance v. Westland Film Industries,* 705 S.W.2d at 696. Although the appellant has attempted to do so in point of error numbers one and four, procedurally the appellant cannot obtain relief under these points of error. Therefore, point of error numbers one and four should be overruled for procedural defects as well as

reasons of substance. The procedural defects were of defeating magnitude. *McConnell v. Southside Independent School District,* 858 S.W.2d 337 (Tex.1993).

### *The Absolute Assignments of Rentals Issue Revisited*

Under the terminology of the Deed of Trust, the absolute assignment of rentals thereunder requires no affirmative action or foreclosure on the part of the mortgagee-appellee to entitle the mortgagee to the rentals and also to invest the title, ownership and right of possession and enjoyment to the rental monies in the mortgagee-appellee.

As noted above, appellant made no response to appellee's latest and viable motion for summary judgment. Any issues that a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to that motion or by other written responses to the motion for summary judgment. And these non-movant's issues cannot be presented or even expressly presented by mere reference to summary judgment evidence or proof by way of argument or briefing. *See City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979). *See also McConnell v. Southside Independent School District, supra.*

In *McConnell,* Justice Hightower, writing for the Supreme Court, reaffirmed *City of Houston v. Clear Creek Basin Authority,* quoting therefrom to the effect that the non-movant must expressly present to the trial court any reason seeking to avoid the movant's entitlement. A brief (trial or appellate) in support of either the movant or the non-movant is not a motion or an answer or a response under Rule 166a.

Justice Hightower specifically disagreed with the Court of Appeals holding that Rule 166a allows a summary judgment movant to set out the specific grounds for summary judgment in a brief served on all parties contemporaneously with the summary judgment motion itself. *Id.* Justice Hightower announced in *McConnell* that a corollary duty arises upon a non-movant (or movant) to except to or object to a defective motion

for summary judgment or a defective response.

A non-movant is required to file an exception in the trial court in order to complain that the grounds relied on by the movant were either unclear or ambiguous. *Lochabay v. Southwestern Bell Media, Inc.*, 828 S.W.2d 167, 170 n. 2 (Tex.App.—Austin 1992, no writ). The brief of the non-movant cannot serve as an exception.

Prudent and professional trial practice dictates that such a special exception should and must be leveled and urged to the trial court to ensure that both of the parties as well as the trial judge are fully informed and are clearly focused on the same grounds and basis for the granting or the failure to grant a motion for summary judgment. This rule is a salutary rule of practice because it prevents the non-movant from having to argue on appeal each and every ground vaguely referred to in the motion for summary judgment.

Appellant, in the present appeal, filed no exception below. These rules of prudent trial practice apply to the non-movant's (or movant's) response and the necessity of a proper response. Justice Hightower held: "The non-movant must expressly present to the trial court, by written answer or response, any issues defeating the movant's entitlement. *Clear Creek*, 589 S.W.2d at 678. ('The written answer or response to the motion must fairly apprise the movant and the court of the issues the non-movant contends should defeat the motion')". *McConnell*, 858 S.W.2d at 343. When, as here, the non-movant has failed to heed Rule 166a(c)(f), and the *Clear Creek*, and *McConnell* opinions, the result of such a failure is *that the non-movant is limited on appeal to arguing only the legal sufficiency of the grounds presented by the movant.* The record, including the governing documents, prove the legal sufficiency of appellee's contentions and rights to his recoveries. Factual sufficiency on matters cannot be challenged.

But, appellant's contention about rents is simply not supported by the authority she relies upon, being *Taylor v. Brennan*, 621 S.W.2d at 592. *Appellee's Deed of Trust has meaningfully different wording.* The language used in the *Taylor* case was construed by the Texas Supreme Court *as a pledge which had to be acted upon further by some action taken by* Brennan. The language in the Deed of Trust in *Taylor*, in substance, stated that the assignment was to *further secure* the payment of the indebtedness of the borrower to the lender.

This language in *Taylor* of "in order to further secure the payment" motivated, I think, the Supreme Court to conclude that the real intention of the parties was merely to create a pledge rather than an absolute assignment.

In the Deed of Trust between Peveto and D'Entremont, there is clearly an absolute assignment of the *rentals taking full effect immediately* and becoming fully choate *upon any default or breach of the Deed of Trust or any obligation thereunder as a matter of law.* By way of admissions against interest and admissions, Peveto, absolutely and unequivocally failed to pay the ad valorem taxes as she agreed to do. Peveto's own deposition proves this default. The *Taylor* case therefore is not determinative of the *intent* of Peveto and D'Entremont. Rather, the plain provisions of the instant Deed of Trust govern.

Our Supreme Court recognized in *Taylor*, that in the case of an absolute assignment, the absolute assignment operates automatically to transfer the right, title, and ownership of and to the rentals as well as the enjoyment of the rentals upon the happening or occurrence of a specified condition, one such condition being a default in payment of ad valorem taxes. *See Kinnison v. Guaranty Liquidating Corporation*, 18 Cal.2d 256, 115 P.2d 450 (1941); *In re Ventura–Louise Properties*, 490 F.2d at 1141. *See also Federal Deposit Insurance Corporation v. International Property Management, Inc.*, 929 F.2d at 1033.

It must be stressed that in *Taylor*, the Texas Supreme Court recognized that certain assignments of rents, being absolute, constitute *actual title transfers of the rentals and transfers of actual ownership of the rentals and the enjoyment of same.*

Interestingly and significantly, in the same paragraph wherein the grantor, Peveto, assigned and transferred to the Beneficiary, D'Entremont, absolutely the rentals, *Peveto warranted the validity and enforceability of the absolute assignment.* In the very same paragraph, the grantor, Peveto, agrees that if she defaults in the performance of any of her obligations under the Deed of Trust, appellee has the right to terminate grantor's license to collect the rents. And further under the very same paragraph the Beneficiary can exercise his rights and remedies without taking possession of the property. These sentences and provisions in the Deed of Trust are clear although the appellant takes a contrary (but untenable) position in her brief. Following *Clear Creek* and *McConnell,* I must conclude her brief is not efficacious.

*But of paramount significance is this language in the same paragraph, "Beneficiary is not required to act under this paragraph, and acting under this paragraph does not waive any of Beneficiary's other rights or remedies."* The language and wording of this crucial Paragraph 7 under General Provisions explodes the appellant's position. Appellant's arguments are vitiated. Point of error two should be overruled.

Also, on the question of reimbursement of taxes and attorney's fees, it must be noted that in a separate, significant, paramount part of the Deed of Trust there exists a listing of Beneficiary's Rights. Among other important rights and prerogatives, D'Entremont clearly provides (as does the trust deed) that if the grantor Peveto fails to perform any of the grantor's obligations, then the *Beneficiary may perform those obligations and be reimbursed by grantor on demand at the place where the note is payable for any sum so paid, including attorney's fees plus interest on those sums from the dates of payment at the rate stated in the note for matured, unpaid amounts.*

Under grantor's obligations, the grantor agreed to pay all taxes and assessments on the property when due; appellant failed to discharge this obligation. And she admitted this default and actual breach of the trust deed in her sworn deposition. Thus the grantor had personal obligations and covenants and duties to perform and keep *under the Deed of Trust*—separate and independent of the note, yet in harmony with the note when the two were and are read and construed together.

Importantly and crucially, the *appellant admitted in her deposition that the Deed of Trust required her to make payments timely of the property taxes when due and that she understood that this was customary from her experience in the real estate business.* She had been in the real estate business for a large number of years. *She recognized and acknowledged that such agreements and covenants were normally and usually included in a Deed of Trust and that she understood that such provisions protect the security of the note on the property.* The record reflects questions to appellant and her answers:

Q. Well, when you failed to pay the property taxes when due, you breached this Deed of Trust. Is that not correct?

A. Right. Yes.

Q. And that breach would have been back on January 30, 1991?

A. As far as being delinquent, yes.

Q. Okay. So back on January 31, 1991, you would agree that you were in breach of the Deed of Trust on Wellington Place?

A. Yes.

### The Non–Recourse Clause in the First Vendor's Lien Note Revisited

The appellant further argues that because of a certain non-recourse clause in the promissory note that therefore she is discharged from any personal liability for reimbursement of property taxes or the turn over or delivery of the rentals. But the non-recourse clause itself is limited *on its face to her personal liability on the note.* Neither the taxes nor the absolutely assigned rentals are included in the non-recourse clause. The limited clause, in the note only, is stated as follows:

NOTWITHSTANDING ANYTHING HEREIN CONTAINED TO THE CONTRARY, THE UNDERSIGNED SHALL HAVE NO PERSONAL LIABILITY *FOR THE PAYMENT OF THIS NOTE,*

PRINCIPAL OR INTEREST, IT BEING AGREED AND UNDERSTOOD THAT THE HOLDER WILL LOOK ONLY TO THE REAL PROPERTY, INCLUDING PROCEEDS OF SALE OF SUCH PROPERTY, GIVEN AS COLLATERAL HEREFOR. THIS IS A NON–RECOURSE NOTE. Nathalie Peveto d/b/a Nathalie Peveto Real Estate *will not be liable in any action on the note* and there will be no deficiency if there is a foreclosure. (emphasis added)

It is correct that the appellant had no personal liability as to the payment of the note itself. But the appellant had separate independent and distinct duties and obligations and covenants to perform in relationship to the Deed of Trust. *Appellee, inter alia, sued on the Deed of Trust.* The non-recourse clause applies to the promissory note only; it does not affect or diminish the appellant's separate responsibilities, covenants, duties, and obligations under the Deed of Trust. It must be stressed that the Deed of Trust contains a specific promise and covenant and obligation *to reimburse appellee for all property taxes paid* as well as an absolute assignment of the rentals—all being with interest and providing in detail for the interest to be paid by Peveto.

### The Construction of the Instruments

When separate instruments or contracts or documents are executed at the same time and for the same purpose and in the course of the same transaction, they are to be construed as one instrument and they must be read and construed harmoniously and interpreted together. One document is not to be construed so as to destroy the other. *See Jones v. Kelley,* 614 S.W.2d 95 (Tex.1981). There is no provision in the Deed of Trust in this appeal at bar which merges the tax obligation of the mortgagor with and into the payment of the note. The no personal liability clause or non-recourse clause contained in the note does not vitiate the separate and independent provisions of the separate Deed of Trust. In sum, the note does not destroy the Deed of Trust. The wording of the note and the wording of the Deed of Trust are not conflicting or hostile to each other; thus they can be interpreted together giving each its

proper effect and to each its correct function. The Court should so hold. I must dissent.

### The Four Points of Error by Appellant

Simply put and in briefest summary, it must be born in mind that the appellant's points of error are four in number. Point one in substance argues that the trial court erred in granting the summary judgment when it ruled that the appellee could recover rents from the appellant *before the appellee took any affirmative action.*

As discussed above, the Deed of Trust involved clearly and unambiguously provides otherwise. An absolute assignment of the rentals taking effect immediately *as well as upon default was* agreed to by Peveto in the Deed of Trust; and procedurally appellant cannot prevail on this point on appeal. *McConnell, supra.* Peveto had lost even all enjoyment of the rentals.

Point of error two in substance avers that the trial court erred when it did not construe the note and the Deed of Trust, documents executed at the same time, for the same purpose in the course of the same transaction, as one instrument. Actually the trial bench construed the instruments correctly as far as the trial bench went. I think the trial court did not go far enough. Appellee was entitled to additional reliefs and awards of monies.

As discussed above, because of the instant Deed of Trust's distinctive, different, and governing language from that of the *Taylor v. Brennan* Deed of Trust, the proper construction of the instruments (as one instrument) dictates that the grantor/mortgagor is personally liable under the Deed of Trust for the rentals immediately as well as after default, the unpaid taxes, attorney's fees, and other Deed of Trust expenses. Appellee offered conclusive proof under the trust deed. Thus, D'Entremont has the right to recover his awards and damages and monetary reimbursements under the provisions of the Deed of Trust and he is not limited to his rights under the note. The note cannot defeat the rights conferred by the trust deed and vested in the appellee. Apparently, the Peveto

Deed of Trust is the standard State Bar of Texas form.

In point of error number three the appellant alleges that the court fell into error when it interpreted the language of the Deed of Trust as an absolute assignment. As pointed out above, this point of error cannot be sustained because the Deed of Trust affirmatively and unequivocally dictates that there is an absolute assignment of rentals. All enjoyment of the rentals is vested in appellee after default. *Appellant has never contended the Deed of Trust is ambiguous or has any infirmities. No fraud, accident, mistake, or duress is advanced by Peveto. No attack whatsoever is made on the trust deed. Peveto says the note eviscerates and overrides the trust deed.* I must disagree.

The last error urged is that the trial court erred in granting summary judgment for $6,800 when *there is no evidence in the record to support this amount of damages.* This is a "legal insufficiency" or "no evidence" point of error. Appellant has failed to heed Rule 166a. Her brief will not sustain this alleged point of error. Appellant made no plea for credits or offsets or prorata credit or relief. The four points of error under this record as worded, as briefed, and as argued are not sustainable. Point four is fatally flawed procedurally. But below in this dissent this amount of $6,800 is adjusted.

### The Attorney's Fees Question

Pursuant to this record, when the proof on attorney's fees is clear and uncontradicted, and the sought fees are reasonable and necessary, in amount, then the fees are proper, allowable, and recoverable and they should be awarded.

The appellee advances two cross-points of error, the first being that the trial court erred in not awarding reasonable and necessary attorney's fees to appellee.

The appellant did not procedurally or properly contest the attorney's fees. Appellee is entitled to reasonable and necessary attorney's fees based on the theory of a breach of a contractual right based on a written contract. Tex.Civ.Prac. & Rem.Code § 38.001(8) (Vernon 1986).

*Appellee also is entitled to recover reasonable and necessary attorney's fees under the Beneficiary's Contract Rights under the Deed of Trust. The Beneficiary's Rights confer upon appellee the right to fully recover reasonable attorney's fees if the grantor fails to perform any of the grantor's obligations under the Deed of Trust.* Also, the appellee, exercising his Beneficiary's Rights, may recover and be reimbursed for other sums paid out plus interest. The trust deed specifically provides all of these rights in favor of the appellee. Thus, an attorney's fee should and must be awarded to appellee in the additional sum of $3,276, plus interest. Cross-point one should be sustained.

In a second cross-point, appellee urges that the trial court erred in failing to award appellee reimbursement for property taxes. This second cross-point clearly should be sustained and in addition the additional sum of $3,030.96 should be awarded D'Entremont for reimbursement for property taxes that he paid on the subject property for the years 1990 and 1991, plus interest. Appellee's right to recover the taxes is manifest. Appellant was in possession for 1990 and over ten months of 1991. It is wrong to deny appellee reimbursement for taxes. There is proper summary judgment proof in the record which serves as proof of payment of the taxes by appellee. The appellant agreed to reimburse such payments in the clear language in the Deed of Trust under the Beneficiary's Rights with interest. But the other opinion fails to award any tax payments to appellee.

Furthermore, appellant did not file a response (as required by the rules) to this request and proof for an award for full reimbursement of property taxes and interest thereon and appellant cannot now be heard to complain for the first time at the appellate level.

### The Wood Case and the Smart Case Distinguished

These two cases are relied upon in appellant's brief to effect a reversal. I have tried to carefully read, consider, and analyze *Wood v. Henry S. Miller Company,* 597 S.W.2d 332 (Tex.1980), and *Smart v. Tower Land and*

*Investment Company,* 597 S.W.2d 333 (Tex. 1980). The language used in the Deeds of Trust in *Wood* and in *Smart* are not only clearly distinguishable but are clearly and determinatively and decisively different. In *Wood* for example, the Deed of Trust language reads in meaningful, relevant part in a substantial manner that the said taxes when paid by the Beneficiary or the legal holder of the note *shall be a demand obligation and shall become part of the debt hereby secured.* That language is 180 degrees off course from the language set out in the trust deed in the appeal case at bar.

Likewise, in *Smart* the Deed of Trust in substance provided that upon default of the payment of taxes that the payment may be performed by the holder of the indebtedness and any such expenses incurred and paid in so doing shall be payable with interest and shall stand secured and payable by and under this Deed of Trust *in like manner with the other obligations therein* mentioned. The *Smart* Deed of Trust mandates that the delinquent taxes shall be dealt with in like manner with other indebtedness—not so in the Peveto Deed of Trust.

The Deed of Trust and note in question before us used very different and decisive terminology. Appellant's major reliance on *Wood* and *Smart* is erroneous.

Note that the appellant does not ask by response, answers, or exception for any set-off or credit, or payment credit or prorata credits or amounts in connection with the rentals or taxes.

### The Strident, Onerous Deed of Trust and Its Breach

The Deed of Trust admittedly is a stringent and exacting document, imposing upon the appellant's numerous duties, obligations, and covenants. But it is a standard form used widely in Texas. Nevertheless, by her deposition testimony, the appellant acknowledged and recognized her signature and her agreement to all the provisions of the governing Deed of Trust. The appellant also unequivocally admitted judicially as well as against her interest that she was in default of the Deed of Trust by at least the date of January 31, 1991, and she judicially admitted

she *breached* the Deed of Trust. The record glaringly proves that the appellant did not pay the ad valorem taxes for 1990 and 1991.

It is noted above that the Deed of Trust itself specifically provides that there is no waiver (due to lack of action) that works adversely to the Beneficiary involving the absolute assignment of the rentals or the taxes. Moreover, the $6,800 is a precise amount of rentals owed to the appellee that accrued after January 31, 1991. Thus, the "no evidence" point of appellant's brief should and must be overruled.

### The Requirements and the Rigors of Rule 166a

It must be stressed that Rule 166a(f) specifically requires that supporting and opposing affidavits shall be made upon personal knowledge and shall set forth such facts as would be admissible in evidence and *shall show affirmatively that the affiant is competent to testify to the matters stated in the said affidavits.*

In this record, Peveto was not affirmatively shown to be competent to testify to a series of somewhat complex legal conclusions, legal concepts, and crucial legal procedural matters. Furthermore, her pleadings and her one opposing affidavit (which was no longer viable) *did not set forth facts that would be admissible in evidence.*

Since the trial bench had overruled and denied Peveto's only verified pleading and attempted proof, and since that sole verified pleading lacked facts that were admissible in evidence, and her pleadings did not constitute evidence, and since it was not affirmatively shown therein that the affiant was competent to testify to the matters stated in the sole verified pleadings, and since the one opposing affidavit of Peveto could not have been made on personal knowledge as to the various legal conclusions therein; appellant, Peveto, stood defenseless as to the appellee's second motion for summary judgment; that is the motion filed on the 25th day of May, 1993. Appellant simply did not heed Rule 166a(f). The holdings in *Clear Creek* and *McConnell* were ignored. In sum, Peveto did not legally and properly, under Rule

166a, make a response, or answer, or exceptions or offer opposing, correct affidavits or other opposing written responses (pursuant to summary judgment rules) as against D'Entremont's second, live, heard motion for summary judgment.

### Peveto's Termination of Her License to Collect and Enjoy the Rents

It is clear, under this record, and it is likewise established under this record as a matter of law that by reason of Peveto having breached the Deed of Trust that Peveto caused to be terminated her license to collect the rent at 6410 Wellington Place. Peveto, herself, by her own actions, terminated her right to the enjoyment of the rents because the enjoyment and use of the questioned rents were vested absolutely in appellee. The general provisions of the Deed of Trust in relevant part dictate: "Grantor may as Beneficiary's licensee collect rent and other income and receipts *as long as Grantor is not in default under the note or this deed of trust."* Take note that this clause plainly established that Peveto can be in default under the note *or the Deed of Trust—thus impregnating the Deed of Trust with separate and independent life and force.*

This Deed of Trust unambiguously does *not* require the beneficiary to apply the rentals (received by the licensee or the beneficiary) firstly and completely to the note installments. Indeed, the beneficiary instead is authorized to first apply all rents collected to expenses incurred in exercising any of the beneficiaries rights and remedies under the Deed of Trust and then to apply the rentals to the grantor's obligations under the note *and the Deed of Trust.* Thus, again, it is shown that the trust deed has separate standing and force—apart from the note.

The order of priorities of payments out of the rentals and receipts and allocations (to be made) is to be determined by the beneficiary, the appellee herein—not Peveto. In pleadings filed herein by the appellant she takes the position that the only instrument to be considered is the note because of its non-recourse clause. I disagree. It is clear that D'Entremont as a matter of law can also invoke his rights and privileges under the

Deed of Trust and his effective, viable, heard motion for summary judgment so states.

### Peveto's Deposition Testimony and its Sequelae

Appellant testified that she failed to pay the 1990 property taxes and that such taxes were due and payable on January 31, 1991. She confessed she breached the trust deed. She also admitted in her deposition testimony that by failing to timely pay the said real property taxes that this failure constituted a breach of the Deed of Trust. D'Entremont demonstrated as a matter of law and pleaded that he had made payments on the note to the bank for the months of August, September, and October of 1991, and that he had further paid the property taxes and is entitled to reimbursement of these sums as a matter of law under the beneficiary rights of the Deed of Trust, Peveto having been in possession during the relevant times. Peveto made no effort to pay the 1991 taxes.

In addition to her deposition testimony, Peveto judicially admitted in a separate part of the record that she had breached the Deed of Trust by her default in failing to pay the 1990 real property taxes. Additionally, she admitted that she had defaulted on the Installment Vendor's Lien Note on July 2, 1991. Appellee proved he paid, as a matter of law, the note installments for August, September, and October of 1991, for which payments he had the right of recovery as a matter of law.

Therefore, the majority should affirm and reform the judgment below (subject to offsets) insofar as it gives an award to D'Entremont for $6,800 plus pre-judgment interest from the date of the filing of the suit as set out in the judgment below until the date of the judgment plus post-judgment interest. However, the record and equity demands that an equitable off-set be allowed as set out and calculated below.

The majority should additionally award the sum of $3,030.69 for reimbursement for taxes plus correct pre-judgment interest from the date suit was filed, being September 19, 1991, until the date of the signing of the judgment below being June 24, 1993; and thereafter

post-judgment interest should be correctly awarded.

And in addition to the rental award and the $3,030.69 tax award plus interest, the Court should award as attorney's fees the added sum of $3,276.98 with post-judgment interest thereon from and after the date of June 24, 1993. The record reflects that appellant was in possession of the property until (at the earliest) the latter part or end of October 1991. She owed the note installments then due and payable to that October date and is liable, at least, for that amount in view of appellee's several payments. Appellant failed to pay the July 1991 installment (and any later installment) and thereby caused appellee substantial extra expenses. The foreclosure in November 1991, ended appellant's possession.

### Other Covenants and Agreements Under the Deed of Trust Breached by Peveto

Also, Peveto failed to preserve the status or the priority of the liens belonging to appellee as the same were established in the operative Deed of Trust. A constitutional tax lien arose. Peveto thereby again breached the trust deed. In the same operative and actionable Deed of Trust, Peveto warranted the validity and the enforceability of the absoluteness of the assignment of the rentals to the beneficiary and this warranted validity and enforceability applies and covers all rentals from and after January 31, 1991.

But note that the Deed of Trust requires that the grantor, Peveto, will apply all rents and other incomes and receipts *when in her hands* to the payment of the note and to the performance of this Deed of Trust and the grantor, Peveto, delivered the rent money for February, March, April, May, and June of 1991, to the bank to reduce the note. *Thus she paid five monthly installments directly on the note.* She must and is to receive an offset or credit and she should in fairness and in equity receive relief in the nature of offset for these payments, subject, however, to several deductions and take aways.

The beneficiary, after Peveto's default, however, neither has nor assumes any obligation as lessor or landlord with respect to any occupant of the property.

Peveto committed an additional, third breach of the Deed of Trust by failing to furnish to the beneficiary before the taxes became delinquent copies of tax receipts showing that all taxes on the property had been paid timely. This is at least the third substantial breach committed by Peveto. Peveto furnished no copies of tax receipts as required to D'Entremont.

It is noteworthy that the Deed of Trust itself declares that it gives yet another form of lien and the said Deed of Trust declares that it provides an additional remedy. The critical language is:

> ... but that this Deed of Trust is intended to give another form of lien ... and to provide an additional remedy....

The trust deed has (and was intended to have) more than one separate, surviving existence, force and effects apart from the note and its non-liability clause.

And further the trust deed provides that any *present* or future *holder of the note shall in the case of any default have the right to adopt the usual remedies of enforcing the vendor's lien or, on the other hand, to adopt the means provided in the trust deed.* Peveto's points of error, contentions, arguments, and procedural position are not sustainable in my opinion.

Although *under this record* the award of the $6,800 was correct below (considering the procedural posture of Peveto), in order to avoid a partial overlapping recovery to appellee, Peveto is entitled to a partial credit (subject to some counter-credits or offsetting deductions) in the amount of the payments of the rents to the note at $1,700 a month for February to and including June of 1971, amounting to $8,500. But Peveto defaulted and breached again in July 1991—the fourth time. Since D'Entremont had to pay three months installments at $1,700 a piece after July 2, 1991, the $8,500 credit must be reduced by $5,100 leaving a net credit of $3,400 to be set-off against the $6,800 and to thus reduce the $6,800 by $3,400 leaving a net $3,400 due and subsisting to appellee for the

converted rentals after Peveto's personal, intentional default. *See* TEX.R.CIV.PROC. 1.

Although, in a strict sense, Peveto is not entitled to this credit or to this set off because of her procedural posture under *McConnell, supra,* and also because she was in total default in July; nevertheless, I think that equity dictates the partial credit in favor of Peveto to defeat a partial double recover or partially overlapping recovery of appellee.

Of course it is recognized as black letter, Hornbook law that in the summary judgment practice that a late filed plain, unverified pleading filed on the date of the hearing or thereafter, without leave of court, need not be considered and should not be considered by the trial bench. I determine that the use of the word "may" (in the pertinent parts of the trust deed) is for the beneficiary's benefit and is in his favor clearly giving to the beneficiary the *option to terminate* the grantor's license or privilege to collect rents or to act as an agent of the grantor to, in turn, personally collect the rents. Plainly the beneficiary "may" exercise his options. The beneficiary simply has the election to take either course of action or inaction. The Court cannot redraw the Deed of Trust and cannot construe the word "may" as having the same meaning as the word "shall"; the trust deed cannot be redrafted to substitute the verb "shall", striking out "may" in my view.

Peveto failed to pay the installments to the bank or appellee for July, August, September and October. The July 1991 installment apparently was not paid by anyone, but appellee paid the August, September and October 1991 payments. Peveto failed to pay any part of the July, 1991 installment.

Thus, a judgment should be written to award to appellee:

1. $3,400 plus interest as set out above for the converted rents and unpaid installments, also

2. $3,030.96 for real property taxes plus interest, and also

3. $3,276.98 for attorney's fees, plus post-judgment interest.

The awards of $3,400 and $3,030.96 are entitled (I would hold) to interest from date of the filing of the suit plus, of course, post-judgment interest. But the award of $3,276.98 for attorney's fees draws interest only after the trial judgment was signed. The costs of court and this appeal should be taxed against the appellant. Since the majority fails to decree such a reformed judgment, I must write separately.

### The Order of Dismissal of the Appeal

A balanced and analytical reading of the entire record demonstrates that the proceedings below were in the nature of a bench trial or a trial on the pleadings with the exhibits and controlling documents, although the motion of D'Entremont was entitled a motion for summary judgment and the judgment signed and entered bore the label "summary judgment". Both the appellant and the appellee treated the judgment below as a final, appealable order and at oral submission the parties to this appeal took the position that this Court was vested with jurisdiction of both the subject matter and the parties. Again, from the reading of the record and the way the matter was presented in the record, it is apparent that the trial bench, in my opinion, meant to award the rentals as they were awarded and to deny all the other relief except the recovery of court costs.

The majority opinion has dismissed the appeal. I conclude the dismissal is erroneous. The majority takes note that the "breach of contract" claim and the claims for attorney's fees were not granted in the order below. These claims were not dismissed by the appellee. But, the correctness of the rental claims (with proper offsets) and the correctness of the ad valorem tax claims, both with interest, were, in my opinion, proven with mathematical accuracy and as a matter of law.

The majority opinion makes the summary judgment entered below interlocutory even to this day and beyond. Thus, it is clear that the parties can proceed in the litigation as if (when the summary judgment was inked below) the trial judge affirmatively announced and included in writing that the judgment was an interlocutory judgment and that there existed outstanding, undisposed and non-severed issues; thus, mandating and declaring

that the trial court's order was not only interlocutory but non-final and non-appealable.

Each party has virtually an unlimited field of further action. It should be stressed that the parties to this appeal briefed the case and argued the case as if the summary judgment were both final and appealable. Even though neither party challenges the appellate jurisdiction of this Court of Appeals and even though the parties briefed and argued the case as if the summary judgment below were final and appealable; nevertheless, an appellate court *may* decline to entertain the appeal if the order or judgment is interlocutory or thought to be so. But that is not the appropriate course here.

But, our Ninth Court of Appeals has exercised at least some jurisdiction over this appeal in declaring that the summary judgment below is interlocutory, non-final, and non-appealable. Although there is no formalistic "Mother Hubbard" clause in the summary judgment, it seems obvious that the judge definitely (and impliedly) denied the appellee's claims other than the rental claims. *Peveto took an appeal and filed an appeal bond.* Although I still think it would be salutary and beneficial to the parties and also proper and correct for our Ninth Court of Appeals to render judgment as I have indicated and outlined above; nevertheless, I think the other opinion should at a minimum provide that the judgment be reversed and the cause remanded for trial. The "Mother Hubbard" clause requirement is satisfied under the record.

When the trial court proceeds in the future towards a final, appealable judgment disposing of all the parties and all the issues, it appears, that the claim for D'Entremont's attorney's fees may be relitigated and perhaps be increased because the appellee's recoveries will be greater and his interest recovery will be increased.

I would respectfully submit that the claim for rentals plus interest and the claim for back ad valorem taxes plus interest have been correctly disposed of by this dissenting opinion and thus I must respectfully dissent through this separate writing.

Indeed, it has been held that the so-called "Mother Hubbard" clause has "no place" in a partial summary judgment and should not be used in summary judgment proceedings. *See and compare Teer v. Duddlesten,* 664 S.W.2d 702 (Tex.1984). *But see, Mafrige v. Ross,* 866 S.W.2d 590 (Tex.1993). I submit then that when the litigants recognize the judgment as being final and appealable, then the appellate courts should and may treat such a judgment as final and appealable and proceed accordingly.

Furthermore, it is clear under Supreme Court law that after the cause is remanded to the trial court, then the timetable for appeal begins to run anew on the date of the disposal of the last issue or last party. *See H.B. Zachry Co. v. Thibodeaux,* 364 S.W.2d 192 (Tex.1963). A clearly interlocutory summary judgment for one defendant upon one issue then becomes final and appealable when under a subsequent order the remaining issues or the remaining parties, if any, are fully disposed of and adjudicated. *See and compare Ramones v. Bratteng,* 768 S.W.2d 343 (Tex.App.—Houston [1st Dist.] 1989, writ denied).

Therefore, the instant "summary" judgment signed by Judge King will become final and appealable when the district court disposes of the entirety of the parties and the issues and this concept is correct even though the later judgments or orders do not specifically incorporate the instant summary judgment in the later orders or later judgments.

In practicality and in reality, the proceeding below was a bench trial. The proceeding below was in the form or in the guise of a summary judgment proceeding. But, in my opinion, we really should look to substance and not mere form.

Under Tex.R.App.P. 80, the Court of Appeals may modify the judgment of the court below by correcting and reforming it and in addition the Court of Appeals may make any other appropriate order, as the law and nature of the case may require. Further, in actuality, the Court is reversing or setting aside the judgment below and rendering it of no force or effect. Thus, our Court of Appeals should proceed to render such judg-

ment or decree as the court below should have rendered. Tex.R.App.P. 80, 81.

Under this unique record and the unique posture of the parties on appeal, our Ninth Court possesses certain inherent powers and inherent jurisdiction that derive directly from the very fact that the Courts of Appeals have been created and are in existence and charged by the Constitution with certain duties and responsibilities. In this case, our Ninth Court of Appeals should invoke its inherent powers and inherent jurisdiction in the administration of justice. *See Eichelberger v. Eichelberger,* 582 S.W.2d 395 (Tex. 1979). *But see,* Robert W. Calvert, *Jurisdiction of the Texas Supreme Court in Divorce Cases,* 33 Baylor L.Rev. 51 (1981).

Nevertheless, under the majority opinion, the parties are back to the trial court and are before the trial court for further proceedings. This appeal has been of no value; it has decided nothing. Thus, the appellant ought to pay the costs of this appeal. The basis for the Court's dismissal simply stated is that there were issues below that were left undecided causing the judgment to be merely an interlocutory order. The Court relies on a procedural flaw but not a jurisdictional deficiency. Therefore, I would hold that our Ninth Court has jurisdiction and certainly inherent judicial power and that for very cogent reasons peculiar to this record, we should invoke our inherent jurisdiction and inherent judicial powers *to aid in the* exercise of the correct, expeditious, thrifty disposition of this appeal as well as in the interest of the administration of justice. It must be stressed that the inherent judicial power is not derived from a legislative grant or a specific constitutional provision but instead, the inherent judicial power exists and is derived from the very fact that the court has been created and charged with grave duties.